No. 23-cv-00682

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---

In re FTX TRADING LTD., *et al*., Debtors.

---

BLOOMBERG L.P., DOW JONES & COMPANY, INC., THE NEW YORK
TIMES COMPANY, AND THE FINANCIAL TIMES LTD., Appellants,

v.

FTX TRADING LTD., *et al.*, Appellees.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

**APPENDIX OF APPELLEES
FTX TRADING LTD., ET AL. AND THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

---

**LANDIS RATH & COBB LLP**
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
          brown@lrclaw.com
          pierce@lrclaw.com

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (*pro hac vice*)
James L. Bromley (*pro hac vice*)
Brian D. Glueckstein (*pro hac vice*)
Alexa J. Kranzley (*pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
          bromleyj@sullcrom.com
          gluecksteinb@sullcrom.com
          kranzleya@sullcrom.com

**YOUNG CONAWAY
STARGATT & TAYLOR, LLP**
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: mlunn@ycst.com
        rpoppiti@ycst.com

**PAUL HASTINGS LLP**
Kristopher M. Hansen (*pro hac vice*)
Kenneth Pasquale (*pro hac vice*)
Isaac S. Sasson (*pro hac vice*)
John F. Iaffaldano (*pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
Email: krishansen@paulhastings.com
        kenpasquale@paulhastings.com
        isaacsasson@paulhastings.com
        jackiaffaldano@paulhastings.com

# **TABLE OF CONTENTS**

**Page(s)**

21.  Excerpts from November 22, 2022 Hearing Transcript [Bankr. D.I. 142].......................................................................A708–A719

22.  Interim Order (I) Authorizing the Debtors to Maintain a Consolidated List of Creditors in Lieu of Submitting a Separate Matrix For Each Debtor, (II) Authorizing the Debtors to Redact or Withhold Certain Confidential information of Customers and Personal Information of Individuals on an Interim Basis and (III) Granting Certain Related Relief [Bankr. D.I. 157] .......................A720–A724

23.  Reply of the Debtors and the Official Committee of Unsecured Creditors in Support of Motion for an Order Authorizing the Movants to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals [Bankr. D.I. 1567]..........................................................A725–A738

24.  Verified Second Supplemental Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnell LLP Pursuant to Bankruptcy Rule 2019 [Bankr. D.I. 2144].................A739–A743

25.  Notice of Communication to Claimants and Exhibit [Bankr. D.I. 2251]....................................................................A744–A747

26.  Second Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for an Order Authorizing the Movants to Redact or Withhold Certain Confidential Information of Customers [Bankr. D.I. 2508] ......................................................A748–A759

27.  *In re Cred, Inc*., No. 20-12836 (JTD) (Bankr. D. Del. Dec. 21, 2020) [D.I. 264] ..........................................................A760–A763

28.  Excerpts from December 18, 2020 Hearing Transcript in *In re Cred Inc.*, No. 20-12836 (JTD) (Bankr. D. Del. Dec. 18, 2020) [D.I. 277]......................................................................A764–A781

29.  *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 08, 2022) [D.I. 54] ....................................A782–A784

30.   *In re BlockFi, Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. Nov. 30, 2022) [D.I. 53] ........................................................................A785–A791

```
 1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
 2

 3   IN RE:                         .  Chapter 11
                                    .  Case No. 22-11068 (JTD)
 4   FTX TRADING LTD., et al.,      .
                                    .
 5                                  .  Courtroom No. 5
                                    .  824 Market Street
 6            Debtors.              .  Wilmington, Delaware 19801
                                    .
 7                                  .  Tuesday, November 22, 2022
     . . . . . . . . . . . . . . .  .  11:00 a.m.
 8

 9                  TRANSCRIPT OF FIRST DAY HEARING
                BEFORE THE HONORABLE JOHN T. DORSEY
                CHIEF UNITED STATES BANKRUPTCY JUDGE
10

     APPEARANCES:
11

     For the Debtor:            Adam Landis, Esquire
12                              Kimberly Brown, Esquire
                                Matthew Pierce, Esquire
13                              LANDIS RATH & COBB LLP
                                919 Market Street, Suite 1800
14                              Wilmington, Delaware 19801

15                              Andrew G. Dietderich, Esquire
                                James L. Bromley, Esquire
16                              Brian D. Glueckstein, Esquire
                                Alexa J. Kranzley, Esquire
17                              SULLIVAN & CROMWELL LLP
                                125 Broad Street
18                              New York, NY 10004

19   (APPEARANCES CONTINUED)

20   Audio Operator:           Jermaine Cooper

21   Transcription Company:    Reliable
                                The Nemours Building
22                              1007 N. Orange Street, Suite 110
                                Wilmington, Delaware 19801
23                              Telephone: (302)654-8080
                                Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
```

**A0708**

1  APPEARANCES (CONTINUED):

2  For the U.S. Trustee:      Benjamin Hackman, Esquire
                              OFFICE OF THE UNITED STATES TRUSTEE
3                             844 King Street, Suite 2207
                              Lockbox 35
4                             Wilmington, Delaware 19801

5  For the Ad Hoc Group
   of Account Holders:        Matthew Kelsey, Esquire
6                             ALSTON & BIRD LLP
                              90 Park Avenue, 15th Floor
7                             New York, New York 10016

8  For Certain Customers:     Michael Roeschenthaler, Esquire
                              WHITEFORD TAYLOR & PRESTON LLP
9                             11 Stanwix Street, Suite 1400
                              Pittsburgh, Pennsylvania 15222
10
   For Joint Provisional
11 Liquidators:              Christopher Shore, Esquire
                              WHITE & CASE LLP
12                            1221 Avenue of the Americas
                              New York, New York 10020
13
   For Evolve Bank:           Scott Cousins, Esquire
14                            COUSINS LAW LLC
                              1521 Concord Pike, Suite 301
15                            Wilmington, Delaware 19803

16 For Philadelphia
   Insurance Indemnity:       Gaston Loomis, Esquire
17                            MCELROY DEUTSCH MULVANEY
                                & CARPENTER LLP
18                            300 Delaware Avenue, Suite 1014
                              Wilmington, Delaware 19801
19

20

21

22

23

24

25

**A0709**

 1   will need to identify who we are appointing to that committee

 2   or those committees.  We need to be able to do that with

 3   transparency.  Any redaction or sealing relief should not

 4   prevent us from filing those notices of appointment.

 5           We would also point out, Your Honor, that we do

 6   object to the names of individuals being redacted.  We take

 7   no position about individual addresses being redacted, but as

 8   to their names we respectfully submit they should not

 9   redacted unless they are citizens, members of the European

10   Union and are covered by the GDPR.

11           Unless Your Honor has any questions that's all I

12   have.

13           THE COURT:  Thank you, Mr. Hackman.

14           MR. HACKMAN:  Thank you, Your Honor.

15           THE COURT:  Mr. Glueckstein, can you address the

16   issue about the proofs of claim.

17           MR. GLEUCKSTEIN:  I can, Your Honor.  We have

18   requested, in the motion, at this point, that the idea of all

19   of this is to ensure that creditors -- customers are not

20   having their information involuntarily disclosed.  No bar

21   date has been set yet in this case.  It will be at some point

22   and creditors will need to file claims in order to preserve

23   those claims.

24           So with the disclosure issue at this point there

25   are some folks, I think there have been a couple of people

1   who have voluntarily come forward and have started to put

2   claims on the docket; that is their prerogative.  From the --

3   that is self-identification.  But what we are trying to

4   protect, again, Your Honor, just for this interim period, is

5   to ensure that nobody's personal information is being

6   involuntarily disclosed.  And, two, Your Honor, that the

7   debtors' customer list is not being compromised in a

8   significant way before we're able to marshal that asset.

9   Both of those issues are in play.

10          I think the proof of claim issue can be avoided

11  for the interim period because we haven't set a bar date.  So

12  I think at this point we could table that portion of the

13  relief if somebody has voluntarily filed a proof of claim on

14  a docket.  We haven't yet sought to take any action with

15  respect to that claim, its very few.

16          The issue that is raised by counsel with respect

17  to the creditor's committee, I think, is a good example of

18  how we see this playing out, Your Honor.  We don't believe

19  the top 50 list should be unredacted including names, the

20  names of customers, once you have customer names it's not

21  very difficult to solicit those customers, find information

22  about them and know that they are customers of FTX.

23          The United States Trustees Office, of course, is

24  presumably going to form a creditors committee and those

25  members of that committee will have come forward voluntarily

**A0711**

1   to serve on that committee, and presumably are comfortable

2   with the requirements of service that are necessary including

3   the disclosure of their names and their participation in this

4   process.  That will be a handful of customers who agree to

5   serve on a creditors committee.  That is very different and,

6   again, that is voluntary.  That is very different than the

7   millions of customers that are sitting in a data base that

8   need to be noticed in this case and will appear on the

9   debtors' creditor matrix.  That is a very different

10  situation.

11         Again, Your Honor, there is no need, certainly at

12  this time, in the first month of the case, we submit, for the

13  world to have all of those names and addresses,

14  understanding, Your Honor, for most of our customers.  We

15  don't have physical addresses.  These are folks who conducted

16  business with the debtors entirely online through

17  applications.  For many of these customers we have email

18  addresses or other contact information, identifiable

19  information, but not necessarily brick and mortar mailing

20  addresses.

21         So the -- I think many people would view email

22  addresses and the ability to contact people as some of the

23  most valuable customer information.  So I don't think --

24  there is absolutely a balance.  We are very cognizant of the

25  need for transparency in these cases.  The debtors intend to

1  provide that transparency to its stakeholders including the

2  customer base.

3          What is being asked here today, Your Honor, is

4  simply to ensure for now, on an interim basis, that the

5  customer information in its entirety, individuals and

6  entities because entities many times are individuals behind

7  those entities in this space, those are all valuable

8  customers, and the identifiable information of customers,

9  including email addresses, be redacted from all filings.  I

10 think for purposes of the interim order we could remove the

11 proof of claim issue.

12         THE COURT:  All right.  Anyone else wish to be

13 heard?  I got some other folks standing up.  Come forward.

14         MR. PIERCE:  Good afternoon, Your Honor.  This is

15 Matthew Kelsey of Alston & Bird.  We represent an ad hoc

16 group of account holders.

17         The relief requested in the motion, which we

18 support, you know, by implication effects our group in the

19 sense of 2019 requirements, Your Honor.  I think both

20 confidentiality and privacy are implicated here.

21         Our group was formed yesterday and we have not

22 filed a 2019 yet, but we were hoping for some guidance from

23 the Court in connection with your resolution as to the

24 ability to redact names and addresses particularly of

25 individual holders, especially given what we have heard

1  today; the risk of cyber-attack and the lack of controls, at

2  least, that was handed to the current management now.

3          I have no doubt that they are working hard to put

4  those controls into place, but, at least, on an interim basis

5  redacting this sort of information on a 2019 seems

6  appropriate.

7          THE COURT:  Okay.

8          MR. KELSEY:  Thank you, Your Honor.

9          THE COURT:  Thank you.

10          MR. ROESCHENTHALER:  Good afternoon, Your Honor.

11 Mike Roeschenthaler from Whiteford Taylor & Preston. I am

12 here with my colleague, Rich Riley.  We too are here on

13 behalf of a significant number of customers, some of which,

14 based on what's been disclosed so far, will likely be on that

15 consolidated 50 list of unsecured creditors.

16          We certainly join in the debtors' motion.  This is

17 a case filed crypto currency.  So, obviously, confidentiality

18 is, candidly, part of the benefit of the bar date for those

19 that participated in this space.  We think the disclosures

20 being sought by the Office of the United States Trustee could

21 actually disincentivize participation in the case.  And by

22 extension impairs the ability of creditors to recover from

23 this case which, of course, would be contrary to the best

24 interest of the creditors.  So we join in the debtors'

25 motion.

1          Thank you.

2          THE COURT:  Anyone else?

3      (No verbal response)

4          THE COURT:  Well this certainly is a pull and tug

5  here between the right to privacy and the right to, everybody

6  in this case, to have transparency.  As I did in the <u>Cred,</u>

7  <u>Inc.</u>, case -- well let's deal first with the modified

8  creditors list of 50.  I think the only issue there from the

9  U.S. Trustee is the disclosure of the names.  Is that right,

10 Mr. Hackman?

11         MR. HACKMAN:  We would submit, Your Honor, that

12 for institutional entities names and addresses should not be

13 redacted for any individuals.  Only their addresses should be

14 redacted.

15         THE COURT:  All right.  Here is what I am going to

16 do on that: I am going to, on an interim basis, enter the

17 order as the debtors have requested, but it does raise a

18 factual issue and there may be a factual basis for why names

19 need to be disclosed.  So we will reserve that for the final

20 hearing and if there is still an objection by the U.S.

21 Trustee at that time, once they have seen the list and know

22 who these parties are, if they think there should be

23 disclosure of those entities we will revisit it at that time.

24 On an interim basis I will enter the order allowing the

25 redaction of the names and address of the top 50 list.

1          The same goes for the consolidated creditor list.

2  It -- again, I need to make sure I am protecting the interest

3  of these individuals.  This is a space where it's all done

4  over the internet and everyone in this room knows the

5  internet is wrought with potential dangers; hacking happens

6  all the time, people's individual accounts get hacked.  I

7  think it's important that we protect those individuals who

8  are seeking -- who want to participate in this case, want to

9  file their proofs of claim, but also want to protect their

10  assets.

11          So, again, on an interim basis I will grant the

12  release requested by the debtor excluding the proof of claim.

13  We will take that out of the form of order.  We will deal

14  with that once we set a bar date because, as debtors' counsel

15  pointed  out, if someone wants to voluntarily disclose who

16  they are that's perfectly okay, they can do that.

17          On the -- certainly, Mr. Hackman, on the -- when

18  you come to the time of appointing a statutory committee they

19  have to be disclosed.  I would assume that anybody who is

20  coming forward who wants to serve on the committee is

21  voluntarily agreeing to disclose their names.  I would not,

22  under any circumstances, allow a committee member to withhold

23  their information.  They have to disclose.

24          Again, on an interim basis we can revisit this on

25  the final.  Again, if there is some evidentiary basis for why

1  you think I should not allow this relief, Mr. Hackman, you

2  can come back and we will deal with it at the final hearing.

3          MR. HACKMAN:   Thank you, Your Honor.

4          THE COURT:   Okay.  So with that, based on my

5  comments, I will approve both the motion regarding the

6  modification of the creditors list and the consolidated

7  creditors list, Items 3 and 7.

8          UNIDENTIFIED SPEAKER:   Thank you very much, Your

9  Honor.

10          Continuing to move through the agenda, the next

11  item on the list -- on the agenda is Agenda Item 4 which was

12  the debtors' emergency motion to transfer the Chapter 15 case

13  of FTX Digital Markets to this Court.  As filed on the docket

14  yesterday and as Mr. Bromley touched on in his opening

15  remarks we have reached an agreed form of order with counsel

16  for the joint provisional liquidators to, in fact, permit and

17  have the Chapter 15 case transferred to this Court with the

18  rights of all parties reserved.  So absent any questions from

19  the Court we would ask that that be entered.

20          THE COURT:   I have no questions.  Do the

21  liquidators wish to be heard on that?

22          MR. SHORE:   Your Honor, Chris Shore from White &

23  Case on behalf of the three JPL's.

24          We have nothing to address.  I will note, because

25  I am going to stand on one motion in a bit, that we're going

1   to need a recognition hearing setting, but we can discuss

2   that we're going to need a recognition hearing setting, but

3   we can discuss that in the context of the setting the second

4   days.

5          THE COURT:  We will get to that.  I will enter

6   that order.  Thank you.

7          Has it been uploaded, the final on that one?

8          UNIDENTIFIED SPEAKER:  Yes, Your Honor, it has.

9          THE COURT:  We can go ahead and enter that one

10  right away.

11         UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

12         That brings us to the next item on the agenda

13  which is Agenda Item 5.  This is a motion of the debtors for

14  entry of an order filed -- a motion filed at Docket No. 25

15  with respect to the automatic stay.

16         By this motion, Your Honor, the debtors are

17  requesting entry of an order enforcing and restating the

18  worldwide stay.  As a result of the debtors' international

19  business operations, Your Honor, the debtors have many

20  foreign creditors, contract counterparties and other parties

21  in interest in countries who are not and may not be as well-

22  versed in the protections and restrictions of the bankruptcy

23  code.  These creditors and parties in interest may be

24  unfamiliar with the operation of the stay and the other

25  provisions, operative provisions, of the bankruptcy code.

```
 1                          CERTIFICATION
 2              We certify that the foregoing is a correct
 3    transcript from the electronic sound recording of the
 4    proceedings in the above-entitled matter to the best of our
 5    knowledge and ability.
 6
 7    /s/ William J. Garling                November 22, 2022
 8    William J. Garling, CET-543
 9    Certified Court Transcriptionist
10    For Reliable
11
12    /s/ Mary Zajaczkowski                 November 22, 2022
13    Mary Zajaczkowski, CET-531
14    Certified Court Transcriptionist
15    For Reliable
16
17    /s/ Coleen Rand                       November 22, 2022
18    Coleen Rand, CET-341
19    Certified Court Transcriptionist
20    For Reliable
21
22
23
24
25
```

**A0719**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. 45 & 155** |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO MAINTAIN A CONSOLIDATED LIST OF CREDITORS IN LIEU OF SUBMITTING A SEPARATE MATRIX FOR EACH DEBTOR, (II) AUTHORIZING THE DEBTORS TO REDACT OR WITHHOLD CERTAIN CONFIDENTIAL INFORMATION OF CUSTOMERS AND PERSONAL INFORMATION OF INDIVIDUALS ON AN INTERIM BASIS AND (III) GRANTING CERTAIN RELATED RELIEF

Upon the motion (the "Motion")[2] of FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order (this "Interim Order") (a) authorizing the Debtors to (i) maintain the Creditor Matrix in lieu of submitting a separate creditor matrix for each Debtor and (ii) redact or withhold certain confidential information of customers and personal information of individuals, (b) establishing procedures for notifying the parties of the commencement of these Chapter 11 Cases and (c) granting related relief; and this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of these Chapter 11

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

4873-9959-7119 v.3

Cases and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found

that proper and adequate notice of the Motion and the relief requested therein has been provided

in accordance with the Bankruptcy Rules and the Local Rules, and that, except as otherwise

ordered herein, no other or further notice is necessary; and objections (if any) to the interim relief

on the Motion having been withdrawn, resolved or overruled on the merits; and a hearing having

been held to consider the relief requested in the Motion on an interim basis and upon the record

of the hearing and all of the proceedings had before this Court; and this Court having found and

determined that the relief set forth in this Order is in the best interests of the Debtors and their

estates; and that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The requirements of Local Rules 1007(a)(2) and 2002-1(f)(v) that separate

mailing matrices be submitted for each Debtor are waived, and the Debtors are authorized to

submit a consolidated list of creditors; *provided* that if any of these Chapter 11 Cases converts to

a case under chapter 7 of the Bankruptcy Code, the applicable Debtor shall file its own creditor

mailing matrix.

3.      The Debtors shall cause such list to be made available in readable

electronic format (or in non-electronic format at such requesting party's sole cost and expense)

upon reasonable request by parties-in-interest.

4.      The Debtors shall serve the Notice of Commencement via e-mail on

(a) customers that (i) have not designated a mailing address under Bankruptcy Rule 2002(g)(1)

-2-

or 5003(e), (ii) do not request to be served hard copies by mail and (iii) have a valid e-mail address on file with the Debtors; and (b) non-customer individual creditors that (i) have not designated a mailing address under Bankruptcy Rule 2002(g)(1) or Rule 5003(e), (ii) do not request to be served hard copies by mail and (c) have a valid e-mail address on file with the debtors, but no physical address information.  The Debtors shall serve all other creditors via mail.  The Debtors shall also publish the Notice of Commencement as soon as reasonably practicable on the website maintained by the Debtors' Clams and Noticing Agent.

5.     The Debtors are authorized, on an interim basis, to redact the names, addresses and e-mail addresses of their customers from any filings with the Court or made publicly available in these Chapter 11 Cases.

6.     The Debtors are authorized, on an interim basis, to redact (a) the addresses and e-mail addresses of their individual creditors and individual equity holders, and (b) the name, addresses and e-mail address of any individual creditors or individual equity holders who are citizens of the United Kingdom or any European Union member country, from any filings with the Court or made publicly available in these Chapter 11 Cases.

7.     For the absence of doubt, the Debtors shall file an unredacted creditor matrix under seal with the Court.

8.     Notwithstanding anything to the contrary in the order relating to the retention of a claims agent, or any Local Rules or Bankruptcy Rules, the Claims and Noticing Agent is authorized, on an interim basis to (a) suppress from the Claims Register (i) the names, addresses and e-mail addresses of the Debtors' customers and of any other individual creditors or individual equity holders who are citizens of the United Kingdom or any European Union member country, and (ii) the addresses and e-mail addresses of the Debtors' other individual

-3-

creditors or individual equity holders; and (b) file affidavits of service without disclosing the (i) names, addresses or e-mail addresses of the Debtors' customers or of any other individual creditors or individual equity holders who are citizens of the United Kingdom or any European Union member country or (ii) the addresses or e-mail addresses of the Debtors' other individual creditors or individual equity holders, *provided* that the Claims and Noticing Agent shall serve the Debtors' customers and creditors at their actual addresses and e-mail addresses, as necessary.

9.  The Debtors shall provide an unredacted Creditor Matrix, unredacted Consolidated Top 50 Creditor List, unredacted Schedules and Statements, an unredacted Claims Register, unredacted affidavits of service and any other filings redacted pursuant to this Interim Order to (a) upon request, the U.S. Trustee, the U.S. Department of Justice, counsel to the U.S. Securities and Exchange Commission, and any trustee, examiner and official committee appointed in these Chapter 11 Cases and (b) upon further order of the Court, any other party.

10. Upon request of a party in interest, the Court may, upon a showing of good cause, release some or all of the information that is being redacted pursuant to the authority granted by this Interim Order. All parties' rights in this regard are reserved.

11. To the extent a party in interest files a document on the docket in these Chapter 11 Cases that is required to be served on creditors whose information is under seal pursuant to this Interim Order, such party in interest should contact counsel for the Debtors who shall work in good faith, with the assistance of their Claims and Noticing Agent, to effectuate the service on such party's behalf.

12. The Debtors are authorized and empowered to execute and deliver such documents, and to take and perform all actions necessary to implement and effectuate the relief granted in this Interim Order.

-4-

13.     This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Interim Order.

14.     The final hearing with respect to the interim relief granted in paragraphs 5, 6, 7, and 8 of this Interim Order shall be held on **December 16, 2022 at 10:00 a.m. (prevailing Eastern Time)**.  Any objections or responses to entry of the proposed Final Order shall be filed on or before **4:00 p.m. (prevailing Eastern Time) on December 9, 2022** and served on the following parties:  (a) proposed co-counsel to the Debtors, (i) Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, Attn: Alexa J. Kranzley (kranzleya@sullcrom.com) and (ii) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, DE 19801, Attn: Adam G. Landis and Kimberly A. Brown (landis@lrclaw.com and brown@lrclaw.com); (b) counsel to any statutory committee appointed in these Chapter 11 Cases; (c) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Juliet Sarkessian (juliet.m.sarkessian@usdoj.gov); and (d) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  If no objections are timely filed, this Court may enter the Final Order without further notice or a hearing.

15.     The Debtors and the Claims and Noticing Agent are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

16.     The Court shall retain jurisdiction to hear and determine all matters arising from or relating to the interpretation or implementation of this Interim Order.

**Dated: November 23rd, 2022**
**Wilmington, Delaware**

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**

**A0724**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. 1324, 1325, 1406, 1467** |

## REPLY OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF MOTION FOR AN ORDER AUTHORIZING THE MOVANTS TO REDACT OR WITHHOLD CERTAIN CONFIDENTIAL INFORMATION OF CUSTOMERS AND PERSONAL INFORMATION OF INDIVIDUALS

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors appointed in the above-captioned cases (the "Committee" and, together with the Debtors, the "Movants"), hereby jointly submit this reply (the "Reply") in further support of the *Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for an Order Authorizing the Movants to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals* [D.I. 1324] (the "Motion" or "Mot.").[2]  On May 3, 2023, Bloomberg L.P., Dow Jones & Company Inc., The New York Times Company and The Financial Times Ltd. (collectively, the "Media Objectors") filed an objection to the Motion [D.I. 1406] (the "Media Objection" or "Media Obj."), which incorporated their previously filed objection to the motion of the Ad Hoc Committee of

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]    Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

Non-US Customers [D.I. 1226] (the "<u>Prior Media Objection</u>" or "<u>Prior Media Obj.</u>").  On May 9, 2023, the Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>" and, together with the Media Objectors, the "<u>Objectors</u>") also filed an objection to the Motion [D.I. 1467] (the "<u>UST Objection</u>" or "<u>UST Obj.</u>" and, together with the Media Objection, the "<u>Objections</u>").

**<u>Preliminary Statement</u>**

1.      In December 2022, each of the Media Objectors and the U.S. Trustee objected to the relief sought in the Original Motion, which is nearly identical to the relief sought in the current Motion.  This Court overruled both of those objections at the Hearing following testimony from Mr. Cofsky of Perella Weinberg Partners, the Debtors' investment banker, and oral argument.  Now, in response to the Motion, the Objectors provide nothing new that would be grounds for the Court to deviate from its prior decision with respect to the need to protect the Debtors' customer lists from disclosure pursuant to section 107(b)(1) of the Bankruptcy Code, or compliance with the GDPR.  In fact, the U.S. Trustee simply incorporates its prior overruled objection by reference and renews it, adding in only a request for certain exceptions in the event the Motion is granted.

2.      Furthermore, the Motion explains in detail, with support from Mr. Sheridan's declaration, why individual customer names should be redacted to avoid the risk of injury as provided by section 107(c) of the Bankruptcy Code.  The U.S. Trustee fails to address Mr. Sheridan's testimony at all, and the Media Objectors cavalierly dismiss Mr. Sheridan's testimony without providing any evidence of their own.

3.      The Objectors' assertions, all of which are unsupported, should be rejected. The facts of these Chapter 11 Cases justify two independent bases for the Court to authorize the continued redaction of the Debtors' customers' names:  (i) under section 107(b) of the Bankruptcy

Code, for an additional 90 days, to permit the Debtors further time to determine their reorganization path while preserving the value of their customer lists and information thereon; and (ii) under section 107(c) of the Bankruptcy Code, permanently, to protect customers from the threat of malefactors, theft and fraud. Mr. Cofsky and Mr. Sheridan have and will further testify in support of this relief. In addition, the Movants request that the Court authorize redaction of names of natural persons covered by the GDPR and Japan data privacy law, based on the plain statutory language, to ensure the Debtors are not subjected to potential consequences due to non-compliance with these foreign laws.

4.       It is telling that the Objectors have no economic stake in the outcome of these Chapter 11 Cases and that there is not a single customer who opposes the Motion, notwithstanding that it is the customers who face the risks—both financial and personal—from the forced, involuntary disclosure of their names and, with respect to non-individual customers, their contact information. The Debtors and the Committee take seriously their obligations to balance the various considerations at issue here:  transparency, maximizing value, and protecting customers from undue risk. The Movants submit that the relief requested in the Motion provides the appropriate balance, and the Objections should again be overruled.

## **Reply**

## I.       **Cause Still Exists to Authorize the Movants to Redact Customers Names and Contact Information Pursuant to Section 107(b)(1) of the Bankruptcy Code**

### A.       **The Objectors Provide No Basis to Deviate from the Court's Prior Ruling**

5.       This Court determined in January 2023 that "it goes without saying that a customer list in any bankruptcy case is something that is protected by 107(b) as a trade secret." (Jan. 11, 2023 Hr'g Tr. 103:1–3.)  The Court held that "the [Debtors] . . . put on sufficient evidence" with respect to this issue and permitted the Debtors to continue sealing customer names

and institutional addresses for a period of three months to preserve the value of the Debtors' customers lists. (*See id.* 102:25–103:1; 103:10–11.) "By then," the Court noted, "I think, based on the testimony and the arguments of counsel, we'll have a better sense of whether or not the customer lists is something that purchasers of these assets find value in and whether they are interested in making sure that they remain anonymous at this point." (*Id.* 103:12–16.)

6. Since that time, the Debtors have made significant progress in advancing these Chapter 11 Cases, and have been granted a consensual six month extension of their exclusivity period to file and solicit a plan of reorganization, to September 7 and November 6, 2023, respectively. *See Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof* [D.I. 1276]. But, as that extension indicates, there is more to do. The Debtors' efforts to explore all plan structures and the best way to maximize the value of the exchanges' assets for stakeholders, of which the customer lists are material assets, remain ongoing. To prevent destruction of the value of those customer lists and to permit the reorganization process to advance, the Movants are requesting a modest extension of the Redaction Deadline for an additional 90 days.

7. The Objectors offer no new arguments as to why this limited request should be denied. The U.S. Trustee merely recycled its prior objections, which the Court already overruled with respect to this precise question. Many of those arguments were disproven at the Hearing. For example, the U.S. Trustee argues that the Debtors have not met their burden under section 107(b) because they "provide only conclusory statements regarding the information's commercial importance." (UST Obj. Ex. A ¶ 53.) This is false. In fact, Mr. Cofsky testified at the Hearing and was cross-examined by the U.S. Trustee regarding the commercial importance of the customer lists and keeping them confidential. Mr. Cofsky will reaffirm his views in testimony

at the hearing on this Motion.  Likewise, the U.S. Trustee's opinion that "it is difficult to imagine how [customers] could be poached if all that is disclosed is their name, with no contact information" (UST Obj. Ex. A ¶ 60), has been rebutted with testimony from Mr. Cofsky.  The Sheridan Declaration likewise demonstrates how a full customer "dossier" could be determined based on name alone.  (Sheridan Decl. ¶ 9.)

8.     The U.S. Trustee's renewed reliance on the FTX Trading Ltd. Privacy Policy (*see* UST Obj. Ex. A ¶¶ 58–59) remains misguided.  Whether the Debtors are *authorized during a sale* to transfer customer names to a buyer has no bearing on whether those names are currently confidential or whether it would be value destructive to publicly disclose such names outside of the context of a sale or reorganization.

9.     The Media Objection at least acknowledges that evidence has been presented and findings made by the Court since the Original Motion was filed.  (Media Obj. ¶¶ 12–16.)  However, the Media Objectors' arguments fare no better.  The Media Objectors argue that Mr. Cofsky's testimony at the Hearing was "speculation all the way down" and insufficient to warrant continued sealing of the customer lists pursuant to section 107(b) of the Bankruptcy Code.  (*Id.* ¶¶ 12, 15.)  But this Court has already expressly found that Mr. Cofsky's testimony *was* sufficient to establish that the customer lists are a trade secret under section 107(b).  (*See* Jan. 11, 2023 Hr'g Tr. 102:25–103:3.)  The Media Objection provides no basis for why that would no longer be the case, and instead repeats arguments that the Court has already rejected.  The Court should reject them again.

10.     The Objectors also cite to *In re Celsius Network LLC*, 644 B.R. 276 (Bankr. S.D.N.Y. 2022).  (*See* UST Obj. Ex. A, *passim*; Media Obj. ¶ 16.)  But the *Celsius* decision pre-dates the Original Order and, again, neither Objector has offered any reason why the Court should

now discard its own prior rulings, both in these Chapter 11 Cases and *In re Cred, Inc.*, No. 20-12836 (JTD) (Dec. 21, 2020) [D.I. 264], to follow that out-of-circuit decision. Both Objections should be overruled and the Movants permitted to continue to redact names and addresses of customers pursuant to section 107(b) of the Bankruptcy Code.

### B. The Objections Provide No Basis for Selective Exemption from the Scope of Redaction

11. The Objections each target selective information for exemption from the scope of the Order if the Motion is granted. None have merit, and the Objectors provide no legal justification for the proposed carve-outs—and thus forced disclosure—of selective customer information.

12. The Media Objectors request that the Court order the Debtors to publish either (i) the names of the Debtors' top 50 customers or (ii) the names of the Debtors' top 50 institutional customers. (Media Obj. ¶ 13.) The Media Objectors argue that, even if the Debtors' customer lists "as a whole" constitute commercial information—and the Court has held they do—"[the] Movants have made no showing that the names of the relatively small subset of customers that comprise FTX's top 50 creditors constitute confidential commercial information." (*Id.*) This is completely backwards. If the entire customer lists are protected by section 107(b), then by definition every name on those lists is so protected. Furthermore, the Debtors' top 50 creditors are *likely some of the most valuable* names on their lists because those are the customers with the largest account balances as of the Petition Date. Revealing the Debtors' largest customers would inflict a disproportionate amount of harm on the asset value of the Debtors' customer lists. The Media Objectors cite nothing to support or justify imposing this unreasonable condition.

13. The U.S. Trustee similarly requests certain exceptions to the authority to redact customer names. The U.S. Trustee requests that the Court not permit the Movants to redact,

with respect to customers, (i) the names of insiders that are natural persons and the names and addresses of insiders that are not natural persons, and (ii) names of non-insiders that are natural persons and the names and addresses of non-insiders that are not natural persons when disclosure would be in a capacity other than as a customer. (*See* UST Obj. ¶ 19.) The U.S. Trustee does not specify the definition of "insider" it relies upon, but, in any event, provides no legal basis for the distinction being drawn in the context of protecting the Debtors' customer lists as confidential commercial information. Moreover, as a practical matter, the U.S. Trustee ignores that it has the ability to view the unredacted version of any filing, and can thus seek Court approval of the unsealing of any individual names that were redacted that would otherwise fall into the bucket of insider "bad actors" whose names should be disclosed, to the extent such disclosure would benefit the public. Indeed, the Debtors have already addressed this concern by generally disclosing the names of former directors and officers who are customers but have been publicly identified, such as Samuel Bankman-Fried and his inner circle.

14. The Debtors, following consultation with the Committee, determined that redacting customer names for all purposes best protected those customers from being identified and poached, and is consistent with the terms of the Original Order. The U.S. Trustee provides no compelling reason why the scope of the Original Order should be modified in this respect.

## II. The Objections Confirm that Protection is Warranted for Individual Customer Names Pursuant to Section 107(c)(1) of the Bankruptcy Code

15. Movants were mindful of this Court's statements at the Hearing on the Original Motion that in order to have Individual Customer Names sealed under section 107(c), evidence would be necessary to demonstrate that disclosure of such names would cause "undue risk" to the Debtors' individual creditors. (*See* Jan. 11 Hr'g Tr. at 103:17–104:8 ("On the 107(c) issue, as I already indicated, I do want more on that because I do want to make sure I'm protect[ing]

the interests of these individuals. . . . I don't have enough on the record today to say that 107(c) applies, but I want to make sure that I'm doing the right thing.").) The declaration of Mr. Sheridan, based upon his more than two decades in law enforcement investigating financial crimes, directly addresses this Court's concerns and establishes the evidentiary record necessary to redact Individual Customer Names pursuant to section 107(c).

16.     As set forth in the Motion and the Sheridan Declaration, and as will be demonstrated at the forthcoming hearing, the disclosure of the Individual Customer Names will expose such customers to a very real risk of financial and physical harm.  In opposition, the Objectors simply double down on their initial arguments and either ignore (the U.S. Trustee) or give short shrift to (the Media Objectors) the Movants' evidence.

17.     Initially, the U.S. Trustee does not even acknowledge, let alone address, the evidence presented through the Sheridan Declaration and, notwithstanding that evidence, nonsensically incorporates its argument from its prior objection—that Movants' have made "no attempt" to fulfill their burden of proof.  (*See* UST Obj. Ex. A ¶¶ 64, 69).  Beyond that, again solely relying on its prior objection, the U.S. Trustee essentially argues that this Court should discount section 107(c) and the harm that disclosure may engender because certain of the Debtors had a privacy policy that permitted disclosure of personally identifiable information in certain limited circumstances.  (*See id.* ¶ 67.)  To the contrary, the Privacy Policy recites specific circumstances under which the Debtors may determine to share Individual Customer Names, such as to "business partners with whom we [the Debtors] jointly offer products or services" and "advertising partners to set Technologies and other tracking tools" to collect aggregate information on customers.  (*See id.*)  But these specified circumstances do not demonstrate that customers

authorized disclosure of their names for all purposes, and they certainly did not authorize the Debtors to disclose their names in the context of these bankruptcy cases.[3]

18.    The renewed objection by the Media Objectors is also unavailing. At bottom, the Media Objectors concede that the public disclosure of Individual Customer Names may result in some harm to the Debtors' customers, but dismissively argue that such harm is not "undue" because "like everyone else," "sometimes, scammers target [crypto owners]."  (Media Obj. ¶ 30.)  The facts, ignored by the Media Objectors, are to the contrary.  As Mr. Sheridan has and will testify, malefactors *do* prey specifically on consumers they believe to be holders of cryptocurrency.  (Sheridan Decl. ¶ 8.)  Unlike in a typical bankruptcy case, the Debtors' customer claims may be viewed as an indication of an individual customer's personal wealth because their claims are for the amount of assets held on the Debtors' exchanges, not the amount owed to a trade creditor, for example, for delivery of specified goods or services—which claim reveals nothing about that trade creditor's assets or wealth.  The Debtors' schedules, if not redacted for customer names, would enable malefactors to focus their attention on the Debtors' wealthiest customers and target their resources accordingly.  (*Id.* ¶ 11.)[4]

19.    In an effort to diminish the evidence presented, the Media Objectors instead posit—without any evidentiary support—that the Debtors' customers are somehow "more digitally savvy" and "well-equipped" to deal with malefactors because they are native crypto users.  (Media Obj. ¶ 24.)  Again, this proposition ignores the facts.  Prepetition, the Debtors sought to attract novice retail customers through their advertising and marketing efforts, noting that one need not

---

[3]   For the same reasons discussed in connection with section 107(b), *supra*, the U.S. Trustee's proposed exceptions are illogical and unsupported and should be rejected.

[4]   The Media Objectors' characterization of the *Celsius* scams suffers from the same fallacy.  (Media Obj. ¶¶ 28–29.)  While the Media Objectors may be comfortable with subjecting the Debtors' millions of customers to "would-be phishing scams includ[ing] a fake court order" (*id.* ¶ 28), the Movants are not.

know much about cryptocurrency to invest with FTX. *See* Gilad Edelman, *The Crypto Industry Is Getting Too Honest*, WIRED (May 5, 2022), https://www.wired.com/story/ftx-steph-curry-crypto-ad-ponzi-scheme (quoting pro basketball player Steph Curry in an FTX commercial: "'I'm not an expert—and I don't need to be,' Curry finally says into the camera, holding up the FTX app on his phone. 'With FTX, I have everything I need to buy, sell, and trade crypto safely.'"; and commenting that "the [FTX] ad is clearly targeted at people who have hesitated to trade crypto because they don't understand it. The message to them: Don't worry, neither does Steph [Curry]! And perhaps, by extension, neither does anyone! If everyone else is operating in ignorance, maybe you're not at any big disadvantage."). The assumption that cryptocurrency investors are all experts and not susceptible to scams is also controverted by the sheer numbers of incidents occurring in the cryptocurrency field. (Sheridan Decl. ¶¶ 13–22.)

20. Finally, not only do the Media Objectors try and fail to minimize and dismiss the risks of disclosing Individual Customer Names, they also fail to demonstrate why disclosure of customer names is so important in these Chapter 11 Cases that customers should be put at risk of injury in the many ways explained by Mr. Sheridan. In these circumstances, the public interest in disclosure is adequately satisfied even with the redaction of customer names because: (i) to the extent the Media Objectors or any other party has grounds to seek disclosure of specific customer names for a specific purpose—such as to "scrutinize" claims trades disclosed on the dockets of these cases—they will of course be able to do so without jeopardizing every other individual customer of these estates, and (ii) parties-in-interest, including the Committee and the U.S. Trustee, among others, can view the sealed information subject to appropriate confidentiality restrictions and protections, thereby providing the check on the Debtors that public disclosure is meant to provide. Simply put, although some in the public would have an interest in the media's

revelation that a certain celebrity may be a customer of these estates, that interest does not outweigh the very real risks to that (or any other) customer. For these reasons, the Individual Customer Names should be permanently sealed pursuant to section 107(c).

## III.    Cause Exists to Authorize Redactions to Comply with Data Privacy Laws

21.     The Objectors again argue that the Court should deny the Movants' request for authorization to redact the names of individuals protected by the GDPR and Japan data privacy laws. (UST Obj. ¶ 20; *id.* Ex. A ¶¶ 37–47, 70–81; Media Obj. ¶¶ 31–35.) The Court can and should reject these arguments based on a review of the plain statutory language.

22.     As stated in the Motion, the Movants are not asking this Court to determine that the GDPR or the APPI supersedes U.S. bankruptcy law. (Mot. ¶ 44.) Rather, the Movants believe that the plain language of these statutes subject the Debtors to compliance in those jurisdictions, and the estates are subject to risk of financial harm from failing to do so. (*Id.* ¶ 45.) The Objectors do not engage on the risks to the Debtors or explain why subjecting the Debtors and their stakeholders to those risks is necessary.

23.     In addition, the U.S. Trustee's arguments regarding the GDPR continue to be flawed and ignore the clear statutory language. As the Debtors previously explained, the U.S. Trustee's argument that the GDPR "facially appears to permit the disclosure" of personal data because "the transfer is necessary for the establishment, exercise or defence of legal claims" (UST Obj. Ex. A ¶ 76), conflates "processing" with "transferring." This exception applies only to the transferring of personal data from a covered state to another country. *See* GDPR Art. 49; UK GDPR Art. 49. That language does not provide an independent basis to *process*—which includes disclosure—of personal data. The U.S. Trustee provides no new arguments to counter this clear language. The U.S. Trustee does not even engage on the terms of the APPI and its potential impact

on the Debtors.  Rather, the U.S. Trustee merely argues the Movants supplied insufficient information and did not provide a translation of the statute.  (UST Obj. ¶ 20.)[5]

24.    The Media Objectors go on to argue that the relief requested is not permissible under section 105(a) of the Bankruptcy Code if not expressly set forth in section 107(b) or 107(c) of the Bankruptcy Code. (Media Obj. ¶¶ 32–33.)  Not so.  The Court can issue any order "appropriate to carry out the provisions of *this title*"—not simply section 107.  *See* 11 U.S.C. § 105(a) (emphasis added).  This includes, for example, section 1107(a) and the Debtors' associated duties as fiduciaries to "hold[] the bankruptcy estate and operat[e] the business for the benefit of [their] creditors." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

25.    Finally, the Objectors ignore that the risks from non-compliance with applicable foreign law, combined with the expectation of privacy of protected individuals, have historically resulted in this type of relief being routinely granted as a matter of course by this Court and other courts in this District.  *See, e.g.*, *In re Mallinckrodt Plc*, No. 20-12522 (JTD) (Nov. 10, 2020), D.I. 464 (authorizing the redaction of names and addresses of individuals protected by the GDPR); *In re Glob. Eagle Ent. Inc.*, No. 20-11835 (JTD) (July 23, 2020), D.I. 76 (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (June 11, 2021), D.I. 62 (authorizing debtors to redact names and addresses of any natural person whose personally identifiable information has been provided to an organization with an establishment in the United Kingdom or a European Economic Area member state); *In re Highpoint Res. Corp.*, No. 21-10565 (CSS) (Mar. 16, 2021), D.I. 78 (same); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (July 13, 2020), D.I. 243

---

[5]    The U.S. Trustee's primary argument is the Movant's assertions cannot be confirmed because no translation of the APPI was provided.  The English version of the statute is available online from the Japan Personal Information Protection Commission, at https://www.japaneselawtranslation.go.jp/en/laws/view/4241/en.  The U.S. Trustee is correct that this relief is not provided in the Original Order, but the Debtors have been authorized to redact most of the affected information because it is otherwise protected customer information.  However, the Movants believe that authorization on this basis going forward is in the Debtors' and their stakeholders' best interests.

(authorizing the redaction of names and addresses of individuals protected by the GDPR); *In re Akorn, Inc.*, No. 20-11177 (KBO) (May 22, 2020), D.I. 74 (same); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Feb. 4, 2020), D.I. 155 (same). The Objectors fail to identify any reason why the Court should depart from this well-established practice.

### Conclusion

For the reasons stated above, the Court should overrule the Objections, grant the relief requested in the Motion, and enter the Order.

Dated: June 5, 2023
     Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
     brown@lrclaw.com
     pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
     bromleyj@sullcrom.com
     gluecksteinb@sullcrom.com
     kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*

Dated: June 5, 2023
    Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ Robert F. Poppiti, Jr.
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: mlunn@ycst.com
        rpoppiti@ycst.com

-and-

**PAUL HASTINGS LLP**
Kristopher M. Hansen*
Kenneth Pasquale*
Gabriel E. Sasson*
Isaac S. Sasson*
Caroline Diaz*
200 Park Avenue
New York, NY 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email: krishansen@paulhastings.com
        kenpasquale@paulhastings.com
        gabesasson@paulhastings.com
        isaacsasson@paulhastings.com
        carolinediaz@paulhastings.com

*Admitted pro hac vice*

*Counsel to the Official Committee of Unsecured Creditors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING, LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**VERIFIED SECOND SUPPLEMENTAL STATEMENT OF EVERSHEDS
SUTHERLAND (US) LLP AND MORRIS, NICHOLS, ARSHT & TUNNELL LLP
PURSUANT TO BANKRUPTCY RULE 2019**

Eversheds Sutherland (US) LLP ("Eversheds") and Morris, Nichols, Arsht & Tunnell LLP ("Morris Nichols," and together with Eversheds, "Counsel"), counsel to the Ad Hoc Committee of Non-US Customers of FTX.com (the "Ad Hoc Committee") comprising international customers (each a "Member" and collectively, the "Members") who hold accounts on the FTX.com platform, hereby submit this verified second supplemental statement (the "Second Supplemental Statement") pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule 2019"), and respectfully state as follows:

1. On or around December 2, 2022, the initial Members of the Ad Hoc Committee engaged Eversheds to represent the Ad Hoc Committee in connection with the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (the "Debtors"). Morris Nichols was engaged by the Ad Hoc Committee effective December 4, 2022.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

2. On March 24, 2023, Counsel filed the *Verified Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnel LLP Pursuant to Bankruptcy Rule 2019* [D.I. 1156] (the "Initial Statement").

3. On June 7, 2023, Counsel file the *Verified First Supplemental Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnell LLP Pursuant to Bankruptcy Rule 2019* [D.I. 1580] (the "First Supplemental Statement").

4. Pursuant to Bankruptcy Rule 2019, this Second Supplemental Statement supplements the information provided in the First Supplemental Statement. Since the date of the First Supplemental Statement, certain changes have been made with respect to the composition of the Ad Hoc Committee resulting from, among other things, the Court's entry of the *Order Denying the Ad Hoc Committee of Non-US Customers of FTX.com's Motion to File Under Seal (I) Verified Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnell LLP Pursuant to Bankruptcy Rule 2019 and (II) the Declaration in Support of the Ad Hoc Committee of Non-US Customers of FTX.com's Motion to File Under Seal the Verified Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnell LLP Pursuant to Bankruptcy Rule 2019* [D.I. 1858] (the "Order").[2]

5. Attached hereto as **Exhibit A** is a revised list of the names, addresses, and disclosable economic interests of the Members, as reported to Counsel by each Member as of August 9, 2023, which is intended, as of the date hereof, to replace and supersede **Exhibit A** attached to the First Supplemental Statement.[3]

---

[2] Following entry of the Order, members holding in the aggregate over USD $1.7 billion in claims against the Debtors left the Ad Hoc Committee to protect the confidentiality of personal information.

[3] For the avoidance of doubt, all customers of FTX.com are welcome to join the Ad Hoc Committee, subject to standard requirements and protocols set forth in the Ad Hoc Committee Bylaws. We invite all who are interested to contact counsel to the Ad Hoc Committee, Erin Broderick of Eversheds Sutherland (US) LLP (erinbroderick@eversheds-sutherland.com).

2

6. The information on **Exhibit A**, which is based on information provided by the Members to Counsel, is intended only to comply with Bankruptcy Rule 2019 and is not intended for any other purpose. Moreover, given the Members' limited access to the FTX.com platform, the information provided is based on the best available records and is subject to change. Counsel does not make any representation regarding the validity, amount, allowance, or priority of such customer entitlements or claims and reserves all rights with respect thereto. Counsel does not own, nor has it ever owned, any claims against or interests in the Debtors, except for the claims for services rendered to the Ad Hoc Committee.

7. Nothing contained in this Second Supplemental Statement (or **Exhibit A** hereto) should be construed as a limitation upon, or waiver of, any rights of any Member of the Ad Hoc Committee, its respective affiliates, or any other entity, or an admission with respect to any fact or legal theory. Nothing herein should be construed as a limitation upon, or waiver of, any rights of the Ad Hoc Committee or its Members to assert, file, and/or amend any claim or proof of claim filed in accordance with applicable law and any orders entered in these cases, or assert or amend any customer entitlement or right or interest in property.

8. Each Member of the Ad Hoc Committee has consented to Counsel's representation of the Ad Hoc Committee. Counsel does not represent any Member of the Ad Hoc Committee in its individual capacity on issues related to the objective of the Ad Hoc Committee in the Chapter 11 Cases. Each Ad Hoc Committee Member's participation in the Ad Hoc Committee is solely in relation to the property interests, customer entitlements, or related claims disclosed on the attached **Exhibit A**.

9. As of the date of this Second Supplemental Statement, Eversheds and Morris Nichols represent parties in their individual capacities unrelated to the objective of the Ad Hoc

3

**A0741**

Committee in the Chapter 11 Cases.  In addition, neither the Ad Hoc Committee nor any Member of the Ad Hoc Committee represents or purports to represent any other entities in connection with these cases.

10.    Counsel reserves the right to amend or supplement this Second Supplemental Statement in accordance with the requirements set forth in Bankruptcy Rule 2019.

11.    The undersigned verify that the foregoing is true and correct to the best of their knowledge.

Date: August 9, 2023
Wilmington, Delaware

*/s/Matthew B. Harvey*
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Eric D. Schwartz (No. 3134)
Matthew B. Harvey (No. 5186)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
eschwartz@morrisnichols.com
mharvey@morrisnichols.com
ptopper@morrisnichols.com

-and-

**EVERSHEDS SUTHERLAND (US) LLP**
Peter A. Ivanick
Sarah E. Paul
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 389-5000
Facsimile: (212) 389-5099
peterivanick@eversheds-sutherland.com
sarahpaul@eversheds-sutherland.com

-and-

Erin E. Broderick
227 West Monroe Street, Suite 6000
Chicago, Illinois 60606

4

**A0742**

Telephone: (312) 724-9006
Facsimile: (312) 724-9322
erinbroderick@eversheds-sutherland.com

-and-

David A. Wender
Nathaniel T. DeLoatch
999 Peachtree St. NE
Atlanta, GA 30309
Telephone: (404) 853-8000
Facsimile: (404) 853-8806
davidwender@eversheds-sutherland.com
nathanieldeloatch@eversheds-sutherland.com

*Counsel to the Ad Hoc Committee of Non-US
Customers of FTX.com*

5

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

<u>**NOTICE OF COMMUNICATION TO CLAIMANTS**</u>

PLEASE TAKE NOTICE THAT on or around August 25, 2023, at 12:45 AM EDT, Kroll Restructuring Administration LLC sent an email to approximately 78,459 claimants in the above-captioned case in the form attached hereto as <u>Exhibit A</u>.  The email was sent to those individuals whose personal information was involved in the security incident announced by Kroll on August 25 (https://www.kroll.com/en/about-us/news/security-incident).   Not all FTX claimants were impacted by the incident.

Dated:  August 25, 2023
New York, New York

Kroll Restructuring Administration LLC

*/s/ Adam M. Adler*
Adam M. Adler
55 East 52nd Street, 17th Floor
New York, NY 10055
Phone: (212) 257-5450
adam.adler@kroll.com

*Claims and Noticing Agent to the Debtors*

**Exhibit A**

**Email from Kroll to Certain FTX Claimants**

| From: | noticing@ra.kroll.com |
|---|---|
| To: | |
| Subject: | IMPORTANT – Notice of Kroll's Security Incident Involving Claimant Data/Steps to Protect Yourself |
| Date: | Friday, August 25, 2023 12:45:24 AM |

*In re: FTX Trading Ltd., et al.*, Case No. 22-11068
United States Bankruptcy Court for the District of Delaware

Kroll Restructuring Administration ("Kroll"), the claims agent in the bankruptcy, has learned that it experienced a cybersecurity incident that compromised personal data of certain claimants. Kroll promptly contained and remediated the incident, reported it to law enforcement and is investigating this matter. Kroll has advised the court and the FTX debtors of the incident. This email provides underlined important information that can help protect you against potential misuse of this information. We encourage you to read this email carefully.

<u>What happened?</u>

On or about Saturday, August 19, 2023, an unauthorized third party gained control of a mobile phone number belonging to an employee of Kroll. As a result, the unauthorized party accessed files in Kroll's cloud-based systems, including files that contained your name, address, email address, and the balance in your FTX account. When Kroll became aware of the incident, it acted quickly to secure the impacted Kroll account and launched an investigation. There is no evidence that the attacker accessed any other Kroll accounts or systems. Moreover, Kroll did not maintain passwords to FTX accounts. This attack on Kroll <u>did not</u> affect any FTX systems or FTX digital assets.

The attacker might use this information in a further scam, for example, by sending phishing emails to trick you into providing sensitive personal information or access to your personal accounts, including but not limited to, cryptocurrency accounts, wallets or other digital assets, wherever they may be held.

While no action is necessary as to your FTX account as a result of this incident, you can help maintain the security of your accounts and digital assets by remaining vigilant and taking certain steps, including the following:

- Never share your passwords, seed phrases, private keys, and other secret information with untrusted individuals, applications, websites or devices.
- Always verify information that you receive from any other website about the FTX bankruptcy case or your claim by visiting the website of the Claims Agent, Kroll Restructuring Administration LLC: https://restructuring.ra.kroll.com/FTX/ or contacting Kroll

**A0746**

Restructuring Administration at FTXquestions@kroll.com.

The Court presiding over the FTX bankruptcy case (the United States Bankruptcy Court for the District of Delaware), Kroll, and FTX will never ask or require you to do any of the following in connection with the processing of bankruptcy claims or the distribution of FTX assets:

- Link a cryptocurrency wallet to a website or application
- Provide your seed phrase or private keys
- Download any software or use a particular wallet application
- Provide your password over email, text message, or over the phone
- Provide personal identifying information, such as your birthday or social security number, over email, social media or in any manner other than as described in a Court-approved process posted to Kroll Restructuring Administration's case website or the Court's docket

For more information on how to protect yourself from identity theft and fraud, please visit FTXQuestions.kroll.com.

Please know that any distribution of FTX assets will only be at the time and in the manner established by the Court. Information about the Court's orders can be found at the website of the Claims Agent, Kroll Restructuring Administration LLC: https://restructuring.ra.kroll.com/FTX/.

If you have any questions, receive suspicious communications, or wish to verify the authenticity of communications that are purported to be from individuals associated with the FTX bankruptcy case, please contact: FTXquestions@kroll.com.

noticing@ra.kroll.com

Kroll Restructuring Administration LLC, 55 East 52nd Street, 17th Floor, New York, NY 10055

Unsubscribe

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: October 4, 2023 at 1:00 p.m. ET**<br>**Obj. Deadline: September 27, 2023 at 4:00 p.m. ET** |

## SECOND JOINT MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER AUTHORIZING THE MOVANTS TO REDACT OR WITHHOLD CERTAIN CONFIDENTIAL INFORMATION OF CUSTOMERS

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors appointed in the above-captioned cases (the "Committee" and, together with the Debtors, the "Movants") hereby jointly submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a) and 107 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing each of the Movants to redact the names, addresses and e-mail addresses of all of the Debtors' customers from any filings with the Court or made publicly available in these Chapter 11 Cases (as defined below) for an additional 90 days. In support of the Motion, the Movants respectfully state as follows:

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

**Preliminary Statement**

1.      The Court has previously determined that the Debtors' customer lists hold value for the estates.  Accordingly, the Court has on two prior occasions allowed the Debtors and the Movants, as applicable, to redact all customer names and associated identifying information from public filings in these Chapter 11 Cases in order to maintain confidentiality over such lists and preserve their value.  The process being conducted by the Debtors with the support of the Committee to sell, reorganize, or otherwise monetize the exchanges for the benefit of creditors is ongoing.  Interest has been strong, but whether the ongoing progress is ultimately successful depends in large part on preserving the confidentiality of the Debtors' customer lists so that they are available as an asset to be transferred to a buyer for value.  As a result, the Movants seek a further extension for a period of 90 days, after which they hope to have a clearer view as to the future of the Debtors' customer lists.

2.      The Debtors' primary goal in these Chapter 11 Cases has always been and continues to be to maximize value for their customers and other creditors.  As the Court is aware, the Debtors, the Committee, the Ad Hoc Committee of Non-U.S. Customers of FTX.com, and other stakeholders continue to discuss the terms of a plan of reorganization, which contemplates scenarios for realizing value for the exchanges and customer lists.  As the Debtors' investment banker has testified—and will further testify at any hearing on this Motion—the immediate release of the Debtors' institutional customer names would be value-destructive and harm the ongoing efforts to monetize the Debtors' exchange assets.

3.      At this stage, the Debtors should be afforded the opportunity to complete their process and determine if the customer lists can be monetized as part of the resolution of the exchanges.  Thus, a further extension of the order permitting the redaction of all customer names,

addresses and e-mail addresses for an additional 90 days is appropriate pursuant to section 107(b) of the Bankruptcy Code.

**Background**

4.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

5.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

**Facts Specific to the Relief Requested**

6.      On November 19, 2022, the Debtors filed the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Maintain a Consolidated List of Creditors in Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors*

**A0750**

to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals and (III) Granting Certain Related Relief [D.I. 45] (the "Original Motion").[2]

7.     On November 23, 2022, the Court granted the Original Motion on an interim basis and entered the Interim Order (I) Authorizing the Debtors to Maintain a Consolidated List of Creditors in Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals on an Interim Basis and (III) Granting Certain Related Relief [D.I. 157].

8.     Objections to the Original Motion being granted on a final basis were interposed by the U.S. Trustee [D.I. 200, 362] and a group of media outlets [D.I. 195] (the "Media Intervenors").

9.     The Committee filed a joinder in support of the Debtors' Original Motion being granted on a final basis [D.I. 408].

10.    The Court held a hearing on the Original Motion on January 11, 2023 (the "January 11 Hearing").  At the January 11 Hearing, the Court granted the Original Motion on a final basis and, on January 20, 2023, entered the Final Order (I) Authorizing the Debtors to Maintain a Consolidated List of Creditors in Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals on a Final Basis and (III) Granting Certain Related Relief [D.I. 545] (the "Original Order").

---

[2]     Capitalized terms not otherwise defined herein shall be given the meanings ascribed to them in the Original Motion.

11. The Original Order authorized the Debtors, among other things, to redact from all public filings: (a) addresses and e-mail addresses of their creditors and equity holders who are natural persons on a permanent basis; (b) names, addresses and e-mail addresses of their customers, including those customers who are not natural persons, until the "Redaction Deadline," which as defined therein, was April 20, 2023; and (c) names, addresses and e-mail addresses of any creditors or equity holders who are natural persons and who are protected by the GDPR until the Redaction Deadline. (Original Order ¶¶ 4-6.)

12. The Original Order was entered with an express reservation of rights of the Debtors, the Committee and all other parties-in-interest to seek an extension of the Redaction Deadline, or to request authorization to redact any personal information of customers, creditors or equity holders on any other grounds. (*Id.* ¶ 7.)

13. On April 20, 2023, the Debtors filed the *Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for an Order Authorizing the Movants to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals* [D.I. 1324] (the "First Extension Motion").

14. On May 2, 2023, the Media Intervenors filed an objection to the First Extension Motion [D.I. 1406]. On May 9, 2023, the U.S. Trustee also filed an objection to the First Extension Motion [D.I. 1467].

15. The Court held an evidentiary hearing on the First Extension Motion on June 8, 2023 and June 9, 2023 (collectively, the "June Hearing"). At the June Hearing, Kevin Cofsky, of Perella Weinberg Partners, testified before the Court that the Debtors' customer lists are of value to the Debtors' business and that disclosure of these lists would jeopardize the Debtors' ability to maximize value. (June 8, 2023 Hr'g Tr. 143:7-8; 152:1-16.) Further, at the June Hearing,

Jeremy A. Sheridan, an expert in cybercrime, testified to his belief that, were the names of the Debtors' customers who are natural persons to be released, these individuals would be targeted by criminal schemes. (June 9, 2023 Hr'g Tr. 25:21 – 26:3.) At the June Hearing, the Court credited Mr. Cofsky's testimony and granted the First Extension Motion with respect to the Movants' request to redact customer names pursuant to 107(b) of the Bankruptcy Code for an additional 90 days. The Court further granted the First Extension Motion with respect to the Movants' request to redact the customer names of individuals under 107(c) of the Bankruptcy Code on a permanent basis. The Court denied the First Extension Motion with respect to the request to redact creditor and equity holder names under the GDPR and/or other local data privacy laws. (*Id.* Hr'g Tr. 156:14 – 158:21.)

16. On June 15, 2023, the Court entered the *Order Authorizing the Movants to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals* [D.I. 1643] (the "First Extension Order"). The First Extension Order authorized the Movants, pursuant to section 107(c)(1) of the Bankruptcy Code, to permanently redact the names of all customers who are natural persons from all filings with the Court or made publicly available in these Chapter 11 Cases in which disclosure would indicate such person's status as a customer. (First Extension Order ¶ 4.) The First Extension Order also authorized the Movants to, pursuant to 107(b)(1) of the Bankruptcy Code, redact the names, addresses and e-mail addresses of all of the Debtors' customers from all filings with the Court or made publicly available in these Chapter 11 Cases; *provided*, *however*, that the authorization to redact the names of all customers, and to redact the names, addresses and e-mail addresses of customers who are not natural persons, was only granted until the date that is 90 days from the date of entry of the First Extension Order (such

date, the "Extended Redaction Deadline"). The Extended Redaction Deadline is set to expire on September 13, 2023.[3] (*Id.* ¶ 2.)

## Jurisdiction

17.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105 and 107 of the Bankruptcy Code and Bankruptcy Rule 9018. Pursuant to Local Rule 9013-1(f), the Movants each consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

18.     By this Motion, the Movants request entry of the Order, substantially in the form attached hereto as Exhibit A, authorizing each of the Movants to redact the names, addresses and e-mail addresses of all of the Debtors' customers from any filings with the Court or made publicly available in these Chapter 11 Cases for an additional 90 days; *provided* that the Debtors and the Committee, as applicable, will provide the U.S. Trustee and counsel to the Committee or the Debtors, as applicable, as well as certain other governmental parties, copies of unredacted filings upon request and any other party copies of unredacted filings upon order of the Court.

---

[3]     Pursuant to Local Rule 9006-2, the filing of this Motion prior to the expiration of the Redaction Deadline shall automatically extend the Redaction Deadline until the Court acts on this Motion without the necessity for entry of a bridge order.

## Basis for Relief

I.    **Cause Exists to Further Extend the Extended Redaction Deadline for an Additional 90 Days Pursuant to Section 107(b)(1) of the Bankruptcy Code.**

19.    Section 107(b)(1) of the Bankruptcy Code requires bankruptcy courts, at the request of a party-in-interest, to "protect an entity with respect to a trade secret or confidential research, development, or commercial information." 11 U.S.C. § 107(b)(1).    Pursuant to Bankruptcy Rule 9018, upon motion, "the court may make any order which justice requires . . . to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information."  Fed. R. Bankr. P. 9018.

20.    The Debtors argued in connection with the Original Motion that their customer lists are a potentially significant source of value for their estates.  (Original Mot. ¶ 12.) At the January 11 Hearing, Mr. Cofsky testified that as part of the Debtors' ongoing strategic review, his view is that there is value in the Debtors' customer lists, and that whether the exchanges are sold or reorganized, value is maximized by ensuring that competitors are not able to solicit customers and prematurely move them to other platforms.  (Jan. 11, 2023 Hr'g Tr. 25:4-26:15.) Mr. Cofsky went on to testify that his view is that third parties will place significant value on the Debtors' customer lists in a sale process, and that maintaining the identity of the customers without disclosure will give buyers confidence that what they are buying is actually of value.  (*Id*. at 30:21-31:5.)  The same reasoning applies to a reorganized debtor entity, which would retain more value if the Debtors' customers have not been poached and are not transacting on another exchange.  (*Id*. at 31:6-11.)

21.    The Court agreed.  In granting the Original Motion on a final basis, the Court stated that "I think it goes without saying that a customer list in any bankruptcy case is

something that is protected by 107(b) as a trade secret.  Companies hold those things very closely and don't want them disclosed."  (*Id.* at 103:1-5.)

22.     The Debtors then argued in connection with the First Motion Extension that the customer lists remain an important asset of the Debtors' estate and a potential source of value. At the June Hearing, Mr. Cofsky again testified that the lists of customer names is "extraordinarily valuable," both in the context of a reorganization and of a sale.  (June 8, 2023 Hr'g Tr. 142:13-19.)  Mr. Cofsky further testified that, even if the Debtors are unable to reorganize or sell their businesses, the customer lists themselves are likely to be of value to third parties—and therefore a critical source of potential recovery for the Debtors' customers and other creditors.  (*Id.* at 143:7-144:15.)  Mr. Cofsky also testified that the Debtors are still considering whether the Debtors will ultimately reorganize or sell their businesses, and that the Debtors continue to engage in discussions with third parties regarding potential paths forward.  (*Id.* at 146:5-11.)  If disclosure of the Debtors' customer lists were to occur at this stage, Mr. Cofsky testified that this process would be negatively impacted, potentially significantly.  (*Id.* at 147:8-9.)

23.     The Court again agreed.  In granting the First Extension Motion with respect to the Movants' redaction request pursuant to section 107(b), the Court stated:

> I think the evidence presented was uncontroverted that customer identification has value.  It has value to the Debtors' estates.  And under 107(b), the customer names constitute a trade secret… And as a result, those names can continue to be redacted for an additional 90 days while the Debtors continue to seek how they're going to come out of these bankruptcies; if they're going to sell the assets, including the customer lists, or if they're going to reorganize, in which case, they're going to want the customer lists.

(June 9, 2023 Hr'g Tr. 156:16-25.)

24.     As Mr. Cofsky will confirm at any hearing on this Motion, the Debtors continue to require more time to maximize the value of these assets, and thus continued protection

pursuant to section 107(b) is necessary and appropriate. The Debtors are still engaged in discussions with third parties regarding the sale of or other transaction involving the exchanges and/or customer lists. As the Court acknowledged, the customer lists should remain confidential under these circumstances. This process is not yet complete, and the path forward is not yet determined. However, the record is clear that disclosure of the customer lists now would be premature and value-destructive. (June 8, 2023 Hr'g Tr. 2023 146:5-12.) This relief is critical notwithstanding the relief granted in the First Extension Order pursuant to section 107(c) because that relief does not cover the Debtors' institutional customers.

25. Accordingly, the Movants request at this time a further extension of the Extended Redaction Deadline for another 90 days from the date of entry of an order with respect to all customer names, addresses and e-mail addresses to preserve the value of the Debtors' customer lists.

<u>**Notice**</u>

26. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States Department of Justice; (e) the United States Attorney for the District of Delaware; and (f) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. The Movants submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Movants respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as <u>Exhibit A</u>, and (b) grant such other and further relief as is just and proper.

Dated: September 13, 2023
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail:  landis@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail:  dietdericha@sullcrom.com
       bromleyj@sullcrom.com
       gluecksteinb@sullcrom.com
       kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*

Dated: September 13, 2023
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Robert F. Poppiti*
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: mlunn@ycst.com
        rpoppiti@ycst.com

-and-

**PAUL HASTINGS LLP**
Kristopher M. Hansen*
Kenneth Pasquale*
Gabriel E. Sasson*
Isaac S. Sasson*
John F. Iaffaldano*
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

Email: krishansen@paulhastings.com
        kenpasquale@paulhastings.com
        gabesasson@paulhastings.com
        isaacsasson@paulhastings.com
        jackiaffaldano@paulhastings.com

*Admitted pro hac vice*

*Counsel to the Official Committee of Unsecured Creditors*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CRED INC., et al., | ) | Case No. 20-12836 (JTD) |
|  | ) |  |
| Debtors[1] | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket Nos. 6, 34, 61** |

## ORDER AUTHORIZING DEBTORS TO REDACT OR WITHHOLD PUBLICATION OF CERTAIN PERSONAL IDENTIFICATION INFORMATION ON A FINAL BASIS AND FILE SUCH INFORMATION UNDER SEAL

Upon (i) the motion (the "Consolidated List Motion") of the debtors and debtors in possession (the "Debtors") for entry of an order, pursuant to sections 105(a), 107(c), and 521 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtors (a) to file a consolidated list of creditors, (b) to provide e-mail service to certain creditors, and (c) to redact or withhold publication of certain personal identification information, all as more fully set forth in the Consolidated List Motion and (ii) the Debtors' motion (the "Motion to Seal" and, together with the Consolidated List Motion, the "Motions")[2] for entry of an order authorizing the filing under seal of certain confidential information, all as more fully set forth in the Motion to Seal; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566).  The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motions, as applicable.

Court having found that venue of this proceeding and the Motions in this district is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in

the Motions is in the best interests of the Debtors' estates, their creditors, and other parties in

interest; and this Court having found that the Debtors' notice of the Motions and opportunity for

a hearing on the Motions were appropriate under the circumstances and no other notice need be

provided; and the Court having reviewed the Motions; and the Court having entered an order

granted the relief requested in the Consolidated List Motion on an interim basis on November 10,

2020 [Docket No. 34]; and the Court having held a hearing to consider the relief requested in the

Motions on a final basis, if necessary (the "<u>Hearing</u>"); and upon the Wu Declaration and the

record of the Hearing, if necessary; and the Court having determined that the legal and factual

bases set forth in the Motions establish just cause for the relief granted herein; and it appearing

that the relief requested in the Motions is in the best interests of the Debtors, their estates,

creditors, and all parties in interest; and upon all of the proceedings had before the Court and

after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Debtors are authorized, on a final basis, to redact the names, mailing

addresses, and e-mail addresses of their customers, as well as the mailing and e-mail addresses of

their individual creditors, on any documents it files or makes publicly available in connection

with these chapter 11 cases, including the schedules, the Creditor Matrix, and the Top 30 List;

*provided* that the Debtors shall provide an unredacted version of the schedules, the Creditor

Matrix, and the Top 30 List to the Court, the U.S. Trustee, and proposed counsel to the Official

Committee of Unsecured Creditors of Cred Inc., *et al.* (the "<u>Committee</u>"); *provided*, *further*, that

the Debtors' noticing and claims agent (the "Claims Agent") shall serve the Debtors' creditors at their actual addresses and e-mail addresses, as needed.

2.      Notwithstanding anything to the contrary in the order relating to the retention of a claims agent, or any Local Rules or Bankruptcy Rules, the Claims Agent is authorized, on a final basis: (a) to suppress from the Claims Registers the names, mailing addresses, and e-mail addresses of the Debtors' customers, and the mailing addresses and e-mail addresses of the Debtors' other individual creditors; (b) file publicly available affidavits of service without disclosing the names, mailing addresses, and e-mail addresses of the Debtors' customers, and the mailing addresses and e-mail addresses of the Debtors' other individual creditors, while simultaneously filing affidavits of service containing the foregoing information under seal; and (c) to withhold publication of proofs of claims filed by customers; *provided* that the foregoing documents (in unredacted form) shall be made available to the Court, the U.S. Trustee, and proposed counsel to the Committee.

3.      Upon request of a party in interest, the Court may, upon a showing of good cause, release some or all of the personally identifiable information that is being redacted pursuant to paragraphs 1 and 2 of this Order.  All parties rights in this regard are reserved.

4.      The Debtors are authorized to file under seal the Confidential Creditor Information and any other pleading to the extent that it contains personal identification information of the nature described in paragraph 1 above.

5.      Absent further order of the Court and notice and an opportunity to object being provided to the Debtors and the affected customer or individual creditor, the information filed under seal in accordance with paragraph 4 hereof shall not be disseminated to anyone other than: (a) the Court, (b) the U.S. Trustee, and (c) proposed counsel to the Committee.  Each of the

parties in the preceding sentence receiving such information shall at all times keep such information strictly confidential and shall not disclose such information to any party whatsoever.

6.    Nothing contained in the Motions or this Order, nor any action taken pursuant to the authority granted by this Order, shall constitute or be construed as (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (e) an admission as to the validity, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (f) a waiver of any claims or causes of action which may exist against any entity; or (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

7.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motions.

8.    The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Order.

**Dated: December 21st, 2020**
**Wilmington, Delaware**

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**

**A0763**

```
 1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
 2

 3                                    .    Chapter 11
       IN RE:                         .
 4                                    .    Case No. 20-12836 (JTD)
       CRED INC., et al.,             .
 5                                    .    Courtroom No. 5
                                      .    824 North Market Street
 6                                    .    Wilmington, Delaware 19801
                                      .
 7                      Debtors.      .    December 18, 2020
       . . . . . . . . . . . . . . . . . . 9:30 A.M.
 8

 9            TRANSCRIPT OF TELEPHONIC SECOND DAY HEARING
                 BEFORE THE HONORABLE JOHN T. DORSEY
10                 UNITED STATES BANKRUPTCY JUDGE

11     TELEPHONIC APPEARANCES:

12     For the Debtors:         Scott Cousins, Esquire
                                COUSINS LAW LLC
13                              Brandywine Plaza West
                                1521 Concord Pike, Suite 301
14                              Wilmington, Delaware 19803

15                              - and -

16                              James Grogan, Esquire
                                Mack Wilson, Esquire
17                              PAUL HASTINGS LLP
                                600 Travis Street, Fifty-Eight Floor
18                              Houston, Texas 77002

19     Audio Operator:         Jason Spencer

20
       Transcription Company:  Reliable
21                             1007 N. Orange Street
                               Wilmington, Delaware 19801
22                             (302)654-8080
                               Email: gmatthews@reliable-co.com
23

24     Proceedings recorded by electronic sound recording, transcript
       produced by transcription service.

25
```

**A0764**

```
 1    TELEPHONIC APPEARANCES (Continued):

 2    For the Debtors:          G. Alexander Bongartz, Esquire
                                Derek Cash, Esquire
 3                              PAUL HASTINGS LLP
                                200 Park Avenue
 4                              New York, New York 10166

 5                              - and -

 6                              Austin Prouty, Esquire
 7                              PAUL HASTINGS LLP
                                1117 S. California Avenue
 8                              Palo Alto, California 94304

 9    For Jaime Shiller:        David Silver, Esquire
                                SILVER MILLER
10                              11780 W Sample Road
                                Coral Springs, Florida 33065
11

12    For the U.S. Trustee:     Hannah McCollum, Esquire
                                Joseph McMahon, Jr., Esquire
13                              John Schanne, Esquire
                                UNITED STATES DEPARTMENT OF JUSTICE
14                              OFFICE OF THE UNITED STATES TRUSTEE
                                844 King Street, Suite 2207
15                              Lock Box 35
                                Wilmington, Delaware 19801
16

17    For UpgradeYa:            Matthew Pierce, Esquire
                                LANDIS, RATH & COBB LLP
18                              919 Market Street, Suite 1800
                                Wilmington, Delaware 19801
19

20    For Krzysztof Majdak,     Joseph Sarachek, Esquire
      and Philippe Godineau:    THE SARACHEK LAW FIRM
                                101 Park Avenue, 27th Floor
21                              New York, New York 10178

22    For the Committee:        Joseph Evans, Esquire
                                Timothy Walsh, Esquire
23                              Darren Azman, Esquire
                                MCDERMOTT WILL & EMERY LLP
24                              340 Madison Avenue
                                New York, New York 10173
25
```

TELEPHONIC APPEARANCES (Continued):

For Thomas Arehart:        Hollace Cohen, Esquire
                           Carl Neff, Esquire
                           FISHERBROYLES LLP
                           445 Park Avenue, Ninth Floor
                           New York, New York 10022

For Maple Partners LLC:    Lucian Murley, Esquire
                           SAUL EWING ARNSTEIN & LEHR LLP
                           1201 North Market Street, Suite 2300
                           Wilmington, Delaware 19801

1    to remain on the call may certainly drop off.

2              MR. COUSINS:  Thank you, Your Honor.

3              There are several now uncontested matters at the

4    beginning of the agenda.  We certainly understand why the

5    Court did not enter any proposed orders with respect to the

6    motion to reject the headquarters, the insurance policies

7    motion, the motion to -- the application to retain my firm,

8    the procedures for interim comp, the ordinary course

9    professionals and Donlin.

10             Your Honor, we've been working with the committee

11   and the U.S. Trustee.  We have produced blacklines, we've

12   filed them and uploaded appropriate orders.  And to my

13   understanding, Your Honor, I don't think there's any

14   objections to any of those, but I can certainly go through

15   the blacklines and the changes that we made in response to

16   the committee and (indiscernible)

17             THE COURT:  No, I did review those that are under

18   COC and CNO.  I was waiting to see what happened with the

19   motions to dismiss -- or the motion to appoint a trustee or

20   convert.  So I will go ahead and enter those orders for you.

21             MR. COUSINS:  Thank you very much, Your Honor.

22             And I think that brings us to Agenda Item Number

23   7, which is -- Mr. Bongartz from Paul Hastings is going to

24   handle that.

25             THE COURT:  All right. Mr. Bongartz?

 1          MR. BONGARTZ:  Yes.  Good afternoon.  This is Alex
 2  Bongartz of Paul Hastings.
 3          So we're going to continue now with Agenda Item 7.
 4  And if it pleases the Court, we would like to consider Agenda
 5  Item 7 together with Agenda Item 12, which is the motion to
 6  seal, which is essentially covers the same ground that is
 7  left over from the motion on Agenda Item 7; i.e., the motion
 8  to approve the redaction or withholding of publication of
 9  certain personal identification information of the debtors'
10  customers.
11          So we -- if the -- as Your Honor will recall --
12          THE COURT:  Hold on one second --
13          MR. BONGARTZ:  -- at the first day --
14          THE COURT:  -- Mr. Bongartz.  Hold on one second.
15          I think someone else has their line open, I'm
16  getting feedback on the phone.  If you're other than Mr.
17  Bongartz, please mute your phone.  Thank you.
18          Go ahead, Mr. Bongartz.
19          MR. BONGARTZ:  Thank you.
20          As Your Honor will recall, you had granted the
21  relief as it relates to the redaction of personal
22  identification information on an interim basis at the first-
23  day hearing, that was at Docket Number 34.  And we are now
24  requesting approval of that relief on a final basis.
25          I wanted to note that we had attached to our reply

1   -- which is filed at Docket Number 187 -- a declaration of

2   Chris Wu of Teneo, and we would like to introduce that into

3   evidence in support of the motion and both -- to be clear,

4   both the motion to redact, as well as the motion to seal.

5   And that was my first request, to introduce that into

6   evidence.

7           THE COURT:  Is there any objection?

8           MR. SCHANNE:  We have a limited objection, Your

9   Honor.

10          THE COURT:  Who's speaking?  Mr. Schanne?

11          MR. SCHANNE:  Schanne.

12          THE COURT:  Schanne.

13          MR. SCHANNE:  May it please the Court, good

14  afternoon.  John Schanne, also on behalf of the Office of the

15  United States Trustee.

16          Just a limited hearsay objection to the second

17  sentence of the sixth paragraph of the Wu declaration.  And

18  that is Mr. Wu informing the Court of what potential buyers

19  are informing Mr. Wu.  If we want testimony of what the

20  buyers are saying, they need to be here to say it.

21          THE COURT:  Mr. Bongartz?

22          MR. BONGARTZ:  Well, I think the Court can take

23  notice of the fact that this is what the buyers have told Mr.

24  Wu, whether the buyer --

25          THE COURT:  How can I do that?  I can't do that,

**A0769**

1  take notice of it.  I mean, they've either told him or they

2  haven't.  And if he's the one telling me they told him, it's

3  hearsay.

4          MR. GROGAN:  Your Honor, James Grogan.  May I be

5  heard for just one second on this?

6          THE COURT:  Quickly.

7          MR. GROGAN:  Your Honor, Mr. Wu, I think, is an

8  expert, he's been our retained as our -- or is proposed to be

9  retained as our investment banker, and an expert can rely on

10 hearsay.

11         THE COURT:  Well, he's not testifying as an expert

12 on this motion, so I'm going to sustain the objection.

13         MR. GROGAN:  Okay.

14         MR. SCHANNE:  Thank you, Your Honor.

15     (Redacted Wu Declaration received in evidence)

16         MR. BONGARTZ:  All right.  As to the merits of the

17 motion, I think we've laid our arguments out in our reply,

18 but I'm just going to recap them briefly.

19         As Mr. Wu's declaration substantiates, the

20 customer list has value here, but it only has value as long

21 as it's not disclosed.  In fact, Mr. Wu's declaration -- as

22 for his declaration, he is attempting to sell the business as

23 a going concern, which includes the customer list.  And to

24 release or reveal the names on that list would materially

25 diminish the value of that list.

**A0770**

1        Now he also testified that -- or sorry, he didn't

2   testify.  In his declaration, he declared that the -- he is

3   marketing the customer lists.  I'm not going to mention what

4   the buyer said in response, but he -- it's definitely part of

5   the assets, the key assets that are being marketed for sale.

6   And in his opinion, the -- if that information were to be

7   disclosed, it would materially diminish its value.

8        I would also note that one of the key features of

9   cryptocurrency -- as is not just evidenced by Mr. Wu's

10  declaration, but it's now been repeated on multiple occasions

11  -- is that the holders of such currency, they are generally

12  anonymous.  It's certainly possible that a cryptocurrency

13  holder can raise his hand, as has happened even in this case,

14  and identify himself.  But without the customer doing so

15  voluntarily, it is generally not in the public domain who

16  holds cryptocurrency.  And to be clear, this is not just

17  limited to individuals; it is also the case for corporate

18  entities.  And I believe one evidence is -- in support of

19  that is -- we'll get to that, and the committee has

20  evidentiary support in that regard.

21       So, with that in mind, we would like to reiterate

22  our request, as we've done at the first-day hearing, that the

23  Court keep the customer names, as well as addresses,

24  confidential; that the debtors be permitted to redact

25  customer names and address information both from schedules,

 1  as well as the creditors' list, and as well as -- and that

 2  the claims agent be permitted to redact name and address

 3  information from claims filed by customers.  That would --

 4  that's it.

 5          THE COURT:  All right.

 6          MR. BONGARTZ:  And I understand that the committee

 7  -- committee's counsel would like to be heard on this, as

 8  well.

 9          THE COURT:  All right.  Let me hear from the

10  committee's counsel, and then I'll go to the trustee.

11          MR. AZMAN:  Hi, Your Honor.  Good afternoon.

12  Darren Azman, McDermott, Will & Emery, counsel -- proposed

13  counsel to the committee.

14          Before I begin, we do have two declarations that

15  we submitted with our joinder, one from Mr. Segall, and the

16  second from Mr. Friedler.  And so I'd ask the Court to move

17  both of those into evidence.  Both Mr. Segall and Mr.

18  Friedler are on the line and available for cross.

19          THE COURT:  Is there any objection?

20      (No verbal response)

21          THE COURT:  Okay.  They're admitted without

22  objection.

23      (Segall Declaration received in evidence)

24      (Friedler Declaration received in evidence)

25          MR. AZMAN:  Thank you, Your Honor.

1    Your Honor, the sealing motion is of significant

2    importance to the committee, as I'm sure came through on our

3    joinder and the declarations.  This is not as simple as

4    creditors just wanting to remain anonymous, it's much more

5    than that.

6    The cryptocurrency space is one that is ripe with

7    fraud.  Of course, there's fraud everywhere today, but the

8    risk is far more acute for holders of cryptocurrency.  And I

9    think there are really three reasons for that, all of which

10   were laid out in Mr. Friedler's declaration.

11   The first is that cryptocurrency assets are ideal

12   targets for theft because it's incredibly difficult to trace

13   and can be easily liquidated.

14   Second is that cryptocurrency is decentralized.

15   There is no bank.  There are few, if any, procedural

16   safeguards that are in place to stop or unwind a fraudulent

17   transaction if it occurs.  It's not like a credit card

18   purchase, Your Honor, or a wire transfer, where, if a bank

19   suspects fraud, you're going to get a notification on your

20   phone.  Once the crypto is gone, it's gone.

21   And then third, Your Honor, for those two reasons,

22   the debtors' customers in these cases are essentially what we

23   would call "pre-qualified," in terms of being target victims

24   because they naturally hold cryptocurrency.

25   There is a -- I'll be clear, Your Honor.  There is

1  a small (indiscernible) in the case, probably around two

2  percent of the unsecured creditor pool, in terms of dollars,

3  who -- you know, for example, the convertible noteholders,

4  who probably don't fall into that bucket.  And quite frankly,

5  I don't think we have any objection to those names being made

6  public.  We're speaking only about the debtors' customers who

7  are customers are of the debtors, who naturally have held and

8  probably continue to hold cryptocurrency.

9        Your Honor, the second declaration that we

10 submitted is from Mr. Segall, who is a representative for one

11 of the committee members, Maple Partners.  The individuals

12 who formed Maple were so concerned about the risks that I

13 just outlined shortly after the bankruptcy filing -- and to

14 be clear, before the committee's appointment, but shortly

15 after the bankruptcy filing -- that they formed a new LLC to

16 hold their crypto, so that, if they were appointed to the

17 committee, and maybe for other reasons, but if their -- they

18 did not want their names to be disclosed.

19       I'm sure there are others out there who have done

20 that, but I'm sure that also a majority of the debtors' 6,500

21 creditors likely don't have the means to do that.  And I

22 think it's also noteworthy that a significant portion of the

23 debtors' customers don't even speak English, they're all over

24 the world.  So they have no idea that their names may be

25 publicized in these cases.

1          Now, Your Honor, these concerns are not only

2   coming directly from our committee members, but the unsecured

3   creditor body at large, who have been very vocal about many

4   aspects of this case online in various forums.  They are

5   scared, not just because they've lost a lot of money, but now

6   because their names may be made public.

7          Your Honor, that's all I have.  I don't want to

8   repeat the rest of the argument from our joinder.  But I

9   think that the declarations and the argument warrant

10  withholding that information.  Thank you.

11          THE COURT:  All right.  Thank you.

12          Mr. Schanne, before I come back to you, I see Mr.

13  Murley has raised his hand.  Do you want to be heard, Mr.

14  Murley?

15          MR. MURLEY:  Thank you, Your Honor.  Luke Murley

16  of Saul, Ewing, Arnstein & Lehr, on behalf of Maple Partners.

17  We are the committee member Mr. Azman referred to.  We join

18  the debtors' motion and the committee's joinder for the

19  reasons stated, and those pleadings and Mr. Azman's

20  presentation.  Thank you, Your Honor.

21          THE COURT:  All right.  Thank you.

22          Mr. Schanne.

23          MR. SCHANNE:  Thank you, Your Honor.  Again, may

24  it please the Court, John Schanne on behalf of the Office of

25  the United States Trustee.

1         Your Honor, the debtors seek authorization to

2 redact the names and all associated information identifying

3 all the debtors' creditors.  Bankruptcy process is founded on

4 principles of transparency and disclosure, limited

5 exceptions, and it's the debtors' burden to meet those

6 exceptions.

7         107(b)(1) permits the Court to protect trade

8 secrets and confidential information.  The debtors here

9 assert that the creditor list is potentially a value in

10 marketing the company.  That's no doubt accurate for many

11 businesses engaged in a 363 sale, I don't think that's

12 unique.  Notably, there's no evidence from any buyer

13 ascribing any value to that list, there's no stalking horse

14 agreement.  Should the agreement here, as postured, be

15 sufficient to satisfy (b)(1), we'll have an exception that

16 swallows the rule.

17         I think the real concern, though -- and you heard

18 it in the committee's presentation -- is privacy.  I think

19 that's the real focus here, is that people are concerned

20 about their information getting out.  And 107(c)(1) allows

21 the Bankruptcy Court to protect individuals.  (c)(1)

22 incorporates 1028(d) of Title 18, which, again, protects

23 individuals.  The plain language of neither of them apply to

24 protect entities.

25         So what are we talking about here?  We're talking

1    about individuals.  And with respect to those individuals, we

2    are sensitive to the concerns.  We understand.  The

3    Bankruptcy Rules, the local rules, they require complete

4    disclosure.  The debtors, the committee, they've offered

5    evidence that, if you identify all of that information, there

6    are real concerns there.  We're not asking for that.  We're

7    asking just for submission of the creditor names.  We have

8    not opposed redaction with respect to individuals of any

9    other identifying information, just the names.  The Friedler

10   declaration itself admits that just the names may not be

11   sufficient with respect to common names, right?

12          So we have here a hypothesis in evidence that, if

13   all of this information is provided, these bad things may

14   happen.  And we're sensitive to that and we understand that

15   and, in fact, you know, we don't oppose that.  It's just the

16   names of individuals who are looking to be disclosed.  And

17   with respect to entities, I don't believe (c)(1) applies.

18          We saw, during the trustee appointment motion

19   earlier today, disagreement between the committee and Mr.

20   Sarachek about where his creditors fall in the top 30 list.

21   Normally, that would have been easily resolved by looking on

22   the docket and seeing where they fall.  Of course, that

23   information is not available here.

24          So debtors assert that the UST has not

25   demonstrated why this information should be public, but that

 1   flips the burden.  They have to demonstrate why the exception

 2   applies here, to where even just the names themselves of

 3   individuals cannot be disclosed.

 4        So, for that reason, we respectfully request that

 5   the motion be denied in its entirety with respect to

 6   entities, and granted, for the most part, with respect to

 7   individuals that just allow the names to be disclosed.  Thank

 8   you, Your Honor.

 9        THE COURT:  All right.  Thank you.

10        Mr. Bongartz, any reply?

11        MR. BONGARTZ:  Yes.  Thank you, Your Honor.

12        I wanted to just make two quick points.  This is

13   not comparable to a customer list of a, you know, run-of-the-

14   mill business.  I mean, the customer information, because of

15   the anonymity intrinsic in holding Bitcoin, is costly to

16   build.  It's costly and expensive to develop a customer

17   database because you don't know who out there holds the

18   cryptocurrency.  So that's what makes it an attractive asset

19   or may make it an attractive asset for a potential buyer.

20        The second point I wanted to make is the issue

21   with names is that it's just happenstance.  If you have a

22   common name, then maybe you're protected; and if you don't

23   have a common name, you're not.  That -- I think we should

24   apply a process that is fair to everyone.  And to just have

25   it by sheer luck that you have a common name and, you know,

1  then you're protected is not in the interest of protecting

2  customers, generally.  Thank you, Your Honor.

3          THE COURT:  Okay.  Has the list of names been

4  disclosed to the trustee?

5          MR. BONGARTZ:  I believe that it has.

6          THE COURT:  Do you have all of the information

7  about the holders of the Bitcoin, Mr. Schanne?

8          MR. SCHANNE:  Your Honor, we have been provided

9  the top 30 lists.  The schedules and statements have not been

10 prepared, so we do not have that information yet.

11         THE COURT:  All right.  And is there -- I -- it's

12 been a while since I took a look at this proposed order.  Is

13 there anything in this proposed order that provides a

14 mechanism that, if someone can come forward and have a

15 legitimate reason why they need to have access to that list,

16 they can seek to get it?

17         MR. BONGARTZ:  Yeah, that mechanism was in the

18 interim order and we've carried it over into the proposed

19 final order.

20         THE COURT:  Okay.  All right.  Then, based on the

21 evidence, I think there is at least some credible argument

22 that the creditor list -- which his, also, in this case, the

23 customer list of the -- of the debtors is -- has some

24 intrinsic value, and that disclosure of that list could

25 affect the ability of the debtors to market and sell that

1   list as a part of their going toward a plan of reorganization

2   here.

3          So I will overrule the objection, so long as the

4   U.S. Trustee is provided with all of the information

5   regarding every single one of the Bitcoin holders, and that

6   there is a mechanism in the final order that allows for

7   someone who can come forward and seek to obtain that list for

8   a legitimate purpose can do so.

9          I think the goal here is to keep this out of the

10  hands of competitors.  And so I would expect that, obviously,

11  someone -- or the competitor of the debtor and came forward

12  and said, well, we want to see the list, you're not going to

13  give it to them.  But there may be others who have a

14  legitimate reason for why they need that information.  And so

15  I want to make sure there's a way for someone who has a

16  legitimate reason to get it, can get it.

17         MR. BONGARTZ:  Yes, understood, Your Honor.  And

18  just to pinpoint the relevant paragraph, it's Paragraph 3 of

19  the proposed order.  But we'll be submitting that --

20         THE COURT:  All right.

21         MR. BONGARTZ:  -- after the hearing.

22         THE COURT:  Okay.  Yeah, please confer with the

23  U.S. Trustee and come up with an order that you can submit

24  under COC.

25         MR. AZMAN:  Thank you, Your Honor.

**A0780**

1        MR. BONGARTZ:  Thank you.

2        THE COURT:  Thank you.

3        MR. BONGARTZ:  Okay.  Moving on, the next item is

4   Item 8 on the agenda.  That is the cash management motion;

5   i.e., the motion to authorize the debtor to continue to

6   operate their cash management system, among other things.

7   That was Docket Number 7.  Your Honor had granted the cash

8   management order on an interim basis on November 10th.

9        We -- I am aware of two limited objections.  One

10  was filed by Jaime Schiller and other customers.  I believe

11  that that objection is moot, as a result of Your Honor's

12  ruling earlier this afternoon.  They had sought an

13  adjournment of a decision until after Your Honor had ruled on

14  the trustee motion.  But I don't -- again, in light of your

15  ruling, I don't think that objection has any -- you know,

16  it's still alive.

17        The other limited objection was filed by the U.S.

18  Trustee.  I should note that we did incorporate a series of

19  comments, informal comments, that the U.S. Trustee provided

20  to us, and we have attached a blackline to our reply at

21  Docket Number 215.  And if Your Honor would like, I can walk

22  you through those changes.  But my understanding is that

23  these changes are acceptable to the U.S. Trustee, and I don't

24  know if he has any further issues outstanding, but I believe

25  that we're in agreement on the form of order.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) AUTHORIZING THE**
**DEBTORS TO FILE A CONSOLIDATED LIST OF**
**CREDITORS IN LIEU OF SUBMITTING A SEPARATE**
**MAILING MATRIX FOR EACH DEBTOR, (II) AUTHORIZING**
**THE DEBTORS TO FILE A CONSOLIDATED LIST OF THE DEBTORS'**
**FIFTY LARGEST UNSECURED CREDITORS, (III) AUTHORIZING**
**THE DEBTORS TO REDACT CERTAIN PERSONALLY IDENTIFIABLE**
**INFORMATION, (IV) APPROVING THE FORM AND MANNER OF NOTIFYING**
**CREDITORS OF COMMENCEMENT OF THESE CHAPTER 11 CASES, AND**
**(V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing the Debtors to (i) prepare a consolidated list of creditors in lieu of submitting a separate mailing matrix for each Debtor, (ii) file a consolidated list of the Debtors' fifty largest unsecured creditors, and (iii) redact certain personally identifiable information; (b) approving the form and manner of notifying creditors of the commencement of these chapter 11 cases; and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*,

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (N/A); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]  Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

entered February 1, 2012; and that this Court having the power to enter a final order consistent

with Article III of the United States Constitution; and this Court having found that venue of this

proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

this Court having found that the relief requested in the Motion is in the best interests of the Debtors'

estates, their creditors, and other parties in interest; and this Court having found that the Debtors'

notice of the Motion and opportunity for a hearing on the Motion were appropriate under the

circumstances and no other notice need be provided; and this Court having reviewed the Motion

and having heard the statements in support of the relief requested therein at a hearing before this

Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth

in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of

the proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1.     The Motion is granted as set forth herein.

2.     As soon as practicable after entry of an order authorizing the engagement of the

Proposed Claims and Noticing Agent in these chapter 11 cases, the Debtors shall furnish to the

Proposed Claims and Noticing Agent a consolidated creditor list.

3.     In lieu of submitting a formatted mailing matrix, the Debtors, with the assistance

of the Proposed Claims and Noticing Agent (upon the Court's approval of the Debtors' retention

of the Proposed Claims and Noticing Agent), shall make available a single, consolidated list of all

of the Debtors' creditors in electronic form to any entity who so requests and in non-electronic

form at such requesting entity's sole cost and expense.

4.     The notice of commencement of these chapter 11 cases, substantially in the form

attached to this Order as **Exhibit 1**, is hereby approved.

2

**A0783**

5.     The Debtors are authorized to file a consolidated list of the fifty largest unsecured creditors in these chapter 11 cases in lieu of each Debtor filing a list of its twenty largest unsecured creditors.

6.     The Debtors are authorized to redact on the Creditor Matrix, Schedules and Statements, or other document filed with the Court (a) the home addresses of individuals and (b) the names, addresses, and other Personal Data of any natural person whose personally identifiable information has been provided to an organization with an establishment in the United Kingdom or a European Economic Area member state.  The Debtors shall provide an unredacted version of the Creditor Matrix, Schedules and Statements, and any other filings redacted pursuant to this Order to (x) the Court, the U.S. Trustee, and counsel to any official committee appointed in these chapter 11 cases, and (y) to any party in interest upon a request to the Debtors (email is sufficient) or to the Court that is reasonably related to these chapter 11 cases; *provided* that any receiving party shall not transfer or otherwise provide such unredacted document to any person or entity not party to the request.  The Debtors shall inform the U.S. Trustee promptly after denying any request for an unredacted document pursuant to this Order.

7.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

8.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

 Dated: New York, New York
        July 8, 2022

                              /s/ **Michael E. Wiles**
                              THE HONORABLE MICHAEL E. WILES
                              UNITED STATES BANKRUPTCY JUDGE

A0784

| |
|---|

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christine A. Okike, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (*pro hac vice* pending)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and Debtors in Possession*

**Order Filed on November 30, 2022**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>    Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Joint Administration Requested)<br>**Hearing Date and Time:** |

**INTERIM ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO FILE A CONSOLIDATED LIST OF TOP 50 UNSECURED CREDITORS AND CONSOLIDATED LIST OF CREDITORS, (II) AUTHORIZING THE DEBTORS TO REDACT CERTAIN PERSONALLY IDENTIFIABLE INFORMATION OF INDIVIDUAL CREDITORS, CLIENTS, EQUITY HOLDERS, AND CURRENT AND FORMER EMPLOYEES, (III) AUTHORIZING CLIENT NAME REDACTION, (IV) WAIVING THE REQUIREMENT TO FILE AN EQUITY LIST AND PROVIDE NOTICES DIRECTLY TO EQUITY SECURITY HOLDERS, AND (V) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through seven (7), is ORDERED.

**DATED: November 30, 2022**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

The relief set forth on the following pages, numbered three (3) through seven (7), is

**ORDERED.**

2

(Page | 3)

| | |
|---|---|
| Debtors: | BLOCKFI, INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | INTERIM ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO FILE A CONSOLIDATED LIST OF TOP 50 UNSECURED CREDITORS AND CONSOLIDATED LIST OF CREDITORS, (II) AUTHORIZING THE DEBTORS TO REDACT CERTAIN PERSONALLY IDENTIFIABLE INFORMATION OF INDIVIDUAL CREDITORS, CLIENTS, EQUITY HOLDERS, AND CURRENT AND FORMER EMPLOYEES, (III) AUTHORIZING CLIENT NAME REDACTION, (IV) WAIVING THE REQUIREMENT TO FILE AN EQUITY LIST AND PROVIDE NOTICES DIRECTLY TO EQUITY SECURITY HOLDERS, AND (IV) GRANTING RELATED RELIEF |

Upon the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File a Consolidated List of Top 50 Unsecured Creditors and Consolidated List of Creditors, (II) Authorizing the Debtors to Redact Certain Personally Identifiable Information of Individual Creditors, Clients, Equity Holders, and Current and Former Employees, (III) Authorizing Client Name Redaction (IV) Waiving the Requirement to File an Equity List and Provide Notices Directly to Equity Security Holders, and (V) Granting Related Relief* (the "Motion")[1]; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 157 and Standing Order 12-1 (Simandle, C.J.), *Standing Order of Reference to the Bankruptcy Court Under Title 11*, dated September 18, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing (the "Hearing") on the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the *Declaration of Mark Renzi in Support of the*

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | BLOCKFI, INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | INTERIM ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO FILE A CONSOLIDATED LIST OF TOP 50 UNSECURED CREDITORS AND CONSOLIDATED LIST OF CREDITORS, (II) AUTHORIZING THE DEBTORS TO REDACT CERTAIN PERSONALLY IDENTIFIABLE INFORMATION OF INDIVIDUAL CREDITORS, CLIENTS, EQUITY HOLDERS, AND CURRENT AND FORMER EMPLOYEES, (III) AUTHORIZING CLIENT NAME REDACTION, (IV) WAIVING THE REQUIREMENT TO FILE AN EQUITY LIST AND PROVIDE NOTICES DIRECTLY TO EQUITY SECURITY HOLDERS, AND (IV) GRANTING RELATED RELIEF |

*Debtors' Chapter 11 Petitions and First Day Motions* filed contemporaneously with the Motion, the record of the Hearing, and all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** as set forth herein.

2. The Debtors are authorized, on an interim basis, to file a single, consolidated list of their 50 largest general unsecured creditors.

3. The Debtors are authorized, on an interim basis, to file one Consolidated Creditor Matrix for all Debtors.

4. The Debtors are authorized, on an interim basis, to redact on the Consolidated Creditor Matrix, Top 50 List, Schedules and Statements, and any other document filed with the Court: (a) the names, home and email addresses and other Personal Data of individuals who are citizens of the United States located in the United States, (b) the names, home and email addresses, and other Personal Data of any natural person whose personally identifiable information has been provided to an organization with an establishment in the United Kingdom or a European Economic Area member state or whose address is unknown, and (c) the names of the Debtors' clients, *provided that* the Debtors shall provide an unredacted version of the Consolidated Creditor Matrix,

4

**A0788**

(Page | 5)

| | |
|---|---|
| Debtors: | BLOCKFI, INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | INTERIM ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO FILE A CONSOLIDATED LIST OF TOP 50 UNSECURED CREDITORS AND CONSOLIDATED LIST OF CREDITORS, (II) AUTHORIZING THE DEBTORS TO REDACT CERTAIN PERSONALLY IDENTIFIABLE INFORMATION OF INDIVIDUAL CREDITORS, CLIENTS, EQUITY HOLDERS, AND CURRENT AND FORMER EMPLOYEES, (III) AUTHORIZING CLIENT NAME REDACTION, (IV) WAIVING THE REQUIREMENT TO FILE AN EQUITY LIST AND PROVIDE NOTICES DIRECTLY TO EQUITY SECURITY HOLDERS, AND (IV) GRANTING RELATED RELIEF |

Top 50 List, Schedules and Statements, and any other filings redacted pursuant to this Order to (x) the Court, the U.S. Trustee, counsel to the U.S. Securities and Exchange Commission,  counsel to any official committee appointed in these Chapter 11 Cases, and (y) to any party in interest upon a request to the Debtors (email is sufficient) or to the Court that is reasonably related to these Chapter 11 Cases; *provided that* any receiving party shall not transfer or otherwise provide such unredacted document to any person or entity not party to the request.  The Debtors shall inform the U.S. Trustee promptly after denying any request for an unredacted document pursuant to this Order.  Nothing herein precludes a party in interest's right to file a motion requesting that the Court unseal the information redacted by this Order.  The Debtors shall file a redacted version of the Consolidated Creditor Matrix with the Court as well as post it on the website of Kroll, the Notice and Claims Agent.

5.     The requirement under Bankruptcy Rule 1007(a)(3) to file an Equity List for the Debtor BlockFi Inc. is waived.

6.     Any requirement that the Debtor BlockFi Inc. provide notice directly to equity security holders under Bankruptcy Rule 2002(d) is waived, and the Debtors are authorized to serve the notices required under Bankruptcy Rule 2002(d) on the known holders of the Debtors' equity securities.

5

A0789

(Page | 6)

| | |
|---|---|
| Debtors: | BLOCKFI, INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | INTERIM ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO FILE A CONSOLIDATED LIST OF TOP 50 UNSECURED CREDITORS AND CONSOLIDATED LIST OF CREDITORS, (II) AUTHORIZING THE DEBTORS TO REDACT CERTAIN PERSONALLY IDENTIFIABLE INFORMATION OF INDIVIDUAL CREDITORS, CLIENTS, EQUITY HOLDERS, AND CURRENT AND FORMER EMPLOYEES, (III) AUTHORIZING CLIENT NAME REDACTION, (IV) WAIVING THE REQUIREMENT TO FILE AN EQUITY LIST AND PROVIDE NOTICES DIRECTLY TO EQUITY SECURITY HOLDERS, AND (IV) GRANTING RELATED RELIEF |

7.      Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the hearing, nothing in the Motion, this Order, or announced at the hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

8.      The Final Hearing on the Motion will be held on _____, 2022 at _____ **(Eastern Time)**. Objections, if any, that relate to the Motion shall be filed and served so as to be actually received by the Debtors' proposed counsel on or before _____, 2022 at 4:00 p.m. **(Eastern Time)**. Any objections or responses to entry of a final order on the Motion shall be filed on or before seven (7) days before the Hearing Date, with a copy to chambers, and served on the proposed Debtors' counsel and the Master Service List. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

9.      The Debtors, through Kroll, are authorized, on an interim basis, to serve all pleadings and papers, including the Notice of Commencement, on all parties listed on the Creditor Matrix (including via email if available).

**A0790**

(Page | 7)

| | |
|---|---|
| Debtors: | BLOCKFI, INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | INTERIM ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO FILE A CONSOLIDATED LIST OF TOP 50 UNSECURED CREDITORS AND CONSOLIDATED LIST OF CREDITORS, (II) AUTHORIZING THE DEBTORS TO REDACT CERTAIN PERSONALLY IDENTIFIABLE INFORMATION OF INDIVIDUAL CREDITORS, CLIENTS, EQUITY HOLDERS, AND CURRENT AND FORMER EMPLOYEES, (III) AUTHORIZING CLIENT NAME REDACTION, (IV) WAIVING THE REQUIREMENT TO FILE AN EQUITY LIST AND PROVIDE NOTICES DIRECTLY TO EQUITY SECURITY HOLDERS, AND (IV) GRANTING RELATED RELIEF |

10.     Notice of the Motion as provided herein shall be deemed good and sufficient notice of such Motion.

11.     The Debtors are authorized, on an interim basis, to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

12.     The contents of the Motion satisfy Bankruptcy Rule 6003.

13.     Any party may move for modification of this Order in accordance with D.N.J. LBR 9013-5(e).

14.     A true copy of this Order shall be served on all required parties pursuant to D.N.J. LBR 9013-5(f).

15.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

A0791