Civil Action No. 23-682-CFC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Bloomberg L.P., Dow Jones & Company, Inc.,
The New York Times Company, and The Financial Times Ltd.,

Appellants,

v.

FTX Trading Ltd.,
Alameda Research LLC,

Appellees.

On Appeal from the United States Bankruptcy Court for the District of Delaware
Bankruptcy Case No. 22-11068 (JTD)

## REPLY BRIEF OF APPELLANTS BLOOMBERG L.P., DOW JONES & COMPANY, INC., THE NEW YORK TIMES COMPANY, AND THE FINANCIAL TIMES LTD.

David L. Finger (#2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th fl.
Wilmington, DE 19801
302.573.2525
dfinger@delawgroup.com
*Counsel of Record for Appellants*

Katie Townsend (*pro hac vice*)
Adam A. Marshall (*pro hac vice*)
Reporters Committee for Freedom
    of the Press
*22Counsel for Appellants*

Dated: October 5, 2023

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... iv

INTRODUCTION ...................................................................................1

ARGUMENT ..........................................................................................1

I.    This Court has appellate jurisdiction. ...........................................1

II.   The Bankruptcy Court made multiple errors of law......................7

    A.   The Bankruptcy Court failed to recognize and apply the
        presumption in favor of public access to judicial records....................7

    B.   The Bankruptcy Court's conclusion that it was not required to
        conduct a particularized assessment was erroneous as a matter
        of law. .................................................................................9

    C.   The Bankruptcy Court erred in determining that merely having
        "value" is sufficient for application of Section 107(b)(1)...................11

III.  The Bankruptcy Court abused its discretion in authorizing the
     redaction of customer-creditors' names under Section 107(b)(1)...............12

    A.   The Defend Trade Secrets Act provides the applicable
        definition of "trade secret." .................................................12

    B.   The Bankruptcy Court did not make—and could not have made
        on the record before it—any of the findings necessary to
        support its conclusion that the names of FTX customer-
        creditors are a "trade secret." ..............................................14

    C.   The names of Debtors' customer-creditors are not "confidential
        commercial information" within the meaning of Section
        107(b)(1)............................................................................16

        1.   There is nothing in the record to support a finding of
            confidentiality. ...........................................................17

        2.   "Value," alone, is insufficient to make information
            "confidential commercial information." ...................................17

3.    The record does not support Appellees' argument that Debtors' customer-creditors names have sufficient "value" to warrant redaction as "confidential commercial information." .................................................................19

IV.  The Bankruptcy Court erred by permanently sealing the names of Debtors' customer-creditors under Section 107(c)(1)................................22

A.   Section 107(c)(1) requires, and there is no evidence to support, a finding that disclosure of Debtors' customer-creditor names "would" create undue risk of harm. ....................................................22

B.   The Bankruptcy Court abused its discretion in authorizing the permanent sealing of Debtors' customer-creditor names. .................24

C.   The Kroll "incident" underlines the erroneous nature of the Order..............................................................................................26

CONCLUSION .........................................................................................26

CERTIFICATE OF COMPLIANCE .......................................................29

# <u>TABLE OF AUTHORITIES</u>

## Cases

*ABC, Inc. v. Stewart*,
  360 F.3d 90 (2d Cir. 2004) ...................................................................2

*Associated Press v. U.S. District Court*,
  705 F.2d 1143 (9th Cir. 1983) ............................................................5

*Bullard v. Blue Hills Bank*,
  575 U.S. 496 (2015) ............................................................................6

*Cohen v. Beneficial Indus. Loan Corp.*,
  337 U.S. 541 (1949) ............................................................................2

*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978) ............................................................................2

*Doe v. Pub. Citizen*,
  749 F.3d 246 (4th Cir. 2014) ..............................................................5

*Doeblers' Pa. Hybrids, Inc. v. Doebler*,
  442 F.3d 812 (3d Cir. 2006) .............................................................14

*Elrod v. Burns*,
  427 U.S. 347 (1976) ............................................................................4

*Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*,
  24 F.3d 893 (7th Cir. 1994) ................................................................3

*In re Altegrity, Inc.*,
  No. 15-10226 (LSS), 2015 WL 10963572 (Bankr. D. Del. July 6, 2015) ...........19

*In re Alterra Healthcare Corp.*,
  353 B.R. 66 (Bankr. D. Del. 2006) .....................................................18

*In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  924 F.3d 662 (3d Cir. 2019) .............................................................10

*In re Celsius Network LLC*,
  644 B.R. 276 (Bankr. S.D.N.Y. 2022) ......................................... 22, 27

*In re Cendant Corp.*,
260 F.3d 183 (3d Cir. 2001) ..................................................................24

*In re Crawford*,
194 F.3d 954 (9th Cir. 1999) ..................................................................7

*In re Frontier Grp., LLC*,
256 B.R. 771 (Bankr. E.D. Tenn. 2000) ........................................ 18, 19

*In re Genesis Glob. Holdco, LLC*,
652 B.R. 618 (Bankr. S.D.N.Y. 2023) ........................................ 21, 22

*In re Motions Seeking Access to 2019 Statements*,
585 B.R. 733 (D. Del. 2018) ..................................................................23

*In re Nat'l Broad. Co.*,
828 F.2d 340 (6th Cir. 1987) ..................................................................2

*In re Nunn*,
49 B.R. 963 (Bankr. E.D. Va. 1985) ...................................................19

*In re Orion Pictures Corp.*,
21 F.3d 24 (2d Cir. 1994) ..................................................................18

*In re Purdue Pharma L.P.*,
632 B.R. 34 (Bankr. S.D.N.Y. 2021) ...................................................16

*In re Reporters Comm. for Freedom of the Press*,
773 F.2d 1325 (D.C. Cir. 1985) ..............................................................3

*Lafferty v. St. Riel*,
495 F.3d 72 (3d Cir. 2007) ..................................................................13

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
998 F.2d 157 (3d Cir. 1993) ........................................................ 9, 10, 24

*Lugosch v. Pyramid Co. of Onondaga*,
435 F.3d 110 (2d Cir. 2006) ..............................................................5, 6

*Miller v. Indiana Hosp.*,
16 F.3d 549 (3d Cir. 1994) ..................................................................8

*Oliner v. Kontrabecki*,
    745 F.3d 1024 (9th Cir. 2014) .................................................................3

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
    140 S. Ct. 582 (2020) .............................................................................6

*Romero v. Drummond Co.*,
    480 F.3d 1234 (11th Cir. 2007) ............................................................3

*United States v. A.R.*,
    38 F.3d 699 (3d Cir. 1994) ...................................................................15

*United States v. Cianfrani*,
    573 F.2d 835 (3d Cir. 1978) ..................................................................2

*United States v. Smith*,
    123 F.3d 140 (3d Cir. 1997) ...............................................................2, 4

*United States v. Wecht*,
    537 F.3d 222 (3d Cir. 2008) .......................................................... 2, 3, 4

*United States v. Weiss*,
    52 F.4th 546 (3d Cir. 2022) .................................................................23

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
    913 F.3d 443 (5th Cir. 2019) .................................................................2

*Wachovia Bank v. Schmidt*,
    546 U.S. 303 (2006) .............................................................................13

**Statutes**

11 U.S.C. § 107(a) .........................................................................................7

11 U.S.C. § 107(b)(1)............................................................................... *passim*

11 U.S.C. § 107(c)(1)............................................................................... *passim*

18 U.S.C. § 1839..........................................................................................132

18 U.S.C. § 1839(3) ........................................................................... 13, 14, 15

28 U.S.C. § 1291 ............................................................................................6

28 U.S.C. § 158(a) ......................................................................................6

6 Del. C. § 2001(4)....................................................................................14

**Other Authorities**

Unif. L. Comm'n, Trade Secrets Act,
    https://perma.cc/DR5Z-WQEB (last accessed Sept. 27, 2023)...........................13

## INTRODUCTION

Media Intervenors-Appellants Bloomberg L.P., Dow Jones & Company, Inc., The New York Times Company, and The Financial Times Ltd. respectfully submit this reply brief in response to the combined brief of Debtors FTX Trading Ltd. *et al.*[1] ("Debtors" or "FTX") and the Official Committee of Unsecured Creditors (the "Official Committee") (collectively, "Appellees").

## ARGUMENT

**I.      This Court has appellate jurisdiction.**

Appellees argue this Court lacks jurisdiction over this appeal because the Bankruptcy Court's June 15, 2023 order authorizing (a) the redaction of the names, addresses and e-mail addresses of Debtors' customer-creditors from any bankruptcy court filings for a period of at least 90 days pursuant to Bankruptcy Code § 107(b)(1); and (b) the permanent redaction of the names of Debtors' customer-creditors who are natural persons from all such filings pursuant to Bankruptcy Code § 107(c)(1), A700–A704 (the "Order"), is not a "final[,]" appealable order.  Appellees' Br. at 14–19.  Appellees are wrong.

---

[1]      FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively.  Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

Under the collateral order doctrine, orders that are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated" are appealable as final orders. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).  To qualify, an order "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978).  The Bankruptcy Court's Order plainly meets that standard.

Under Third Circuit law, it is well settled that "[o]rders either granting or, as in this case, denying access to court proceedings or records are appealable as final orders" under the collateral order doctrine.  *United States v. Smith*, 123 F.3d 140, 145 (3d Cir. 1997); *see also, e.g.*, *United States v. Cianfrani*, 573 F.2d 835, 845 (3d Cir. 1978) (appellate jurisdiction over order closing courtroom); *United States v. Wecht*, 537 F.3d 222, 230 (3d Cir. 2008) (appellate jurisdiction over order denying public access to prospective juror names and *voir dire*).  Other federal courts of appeals are in accord.  *See, e.g.*, *ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir. 2004) (appellate jurisdiction over order restricting public access to *voir dire*); *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 448 (5th Cir. 2019) (sealing and unsealing orders are reviewable "under the collateral order doctrine"); *In re Nat'l Broad. Co.*, 828 F.2d 340, 343 (6th Cir. 1987) (orders to seal judicial

records and deny unsealing "satisfy the 'collateral order doctrine'"); *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 895 (7th Cir. 1994) ("[A]n order granting or refusing to grant access [to judicial records] in favor of an intervening party is appealable under the collateral order doctrine"); *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014) ("[A]n order denying a motion to unseal or seal documents is appealable either as a final order under 28 U.S.C. § 1291 or as a collateral order." (citation and internal quotation marks omitted)); *Romero v. Drummond Co.*, 480 F.3d 1234, 1242 (11th Cir. 2007) (orders sealing documents and denying motion to unseal are "appealable as collateral to the underlying action"); *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1330 (D.C. Cir. 1985) (order denying access to judicial records was immediately appealable as it was "separable from, and collateral to, the rights of the parties to the underlying proceeding").

Here, Media Intervenors-Appellants seek review of an Order conclusively denying them contemporaneous access to the names of Debtors' customer-creditors in all filings made with the Bankruptcy Court, A702. The Order is independent from the resolution of the claims in the underlying bankruptcy proceedings, and has "a substantial, continuing effect on important rights." *Wecht*, 537 F.3d at 231 (citation omitted). In sum, because the Order "den[ies]" Media Intervenors-Appellants

"access to court . . . records," it is "appealable as [a] final order[]" under the collateral order doctrine. *Smith*, 123 F.3d at 145.

Appellees nevertheless contend that the Order is not appealable because it authorized the redaction of the names of those customer-creditors that are entities under Section 107(b)(1) only for an additional 90 days, and that the Bankruptcy Court will "soon consider an extension of [that] limited 90-day relief[.]" *See* Appellees' Br. at 18. That argument misses the mark for the following reasons.

First, Appellees elide the fact that the Order authorizes the "permanent redaction" of the names of Debtors' customer-creditors that are natural persons under Section 107(c)(1); nothing about that "relief" is time "limited."

Second, and more fundamentally, Appellees' argument ignores the <u>contemporaneous</u> nature of the public's right of access to judicial records. *See, e.g.*, *Wecht*, 537 F.3d at 229 (noting that "the value of the right of access would be seriously undermined if it could not be contemporaneous"). There can be no dispute that the Order is <u>currently</u> denying members of the public, including Media Intervenors-Appellants, their contemporaneous right to inspect judicial records filed with the Bankruptcy Court; the mere fact that the Order does not expressly make that ongoing denial of the right of access permanent as to <u>all</u> information encompassed by the Order does not lessen the harm to Media Intervenors-Appellants and the public. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976) (finding that

4

a loss of First Amendment rights, "for even minimal periods of time, unquestionably constitutes irreparable injury"); *Doe v. Pub. Citizen*, 749 F.3d 246, 272 (4th Cir. 2014) (recognizing that "the public benefits attendant with open proceedings are compromised by delayed disclosure"); *Associated Press v. U.S. District Court*, 705 F.2d 1143, 1147 (9th Cir. 1983) (finding that denying access to judicial records for 48 hours "is a total restraint on the public's first amendment right of access even though the restraint is limited in time"). It is for this reason that an order delaying public access to judicial records—be it for 90 days or indefinitely—is no less immediately appealable under the collateral order doctrine than an order expressly denying public access to records on a permanent basis. Were that not the case, sealing orders, like the Order at issue here, would evade appellate review merely by being entered 'only' for a specified time period, subject to 'extension.'

*Lugosch v. Pyramid Co. of Onondaga* is instructive. There, the Second Circuit held it had jurisdiction to review an order "holding in abeyance" a motion to intervene and unseal judicial records filed by members of the press. 435 F.3d 110, 116 (2d Cir. 2006). The Second Circuit concluded that because the news media sought "*immediate* access to the contested documents," the district court's delay "conclusively resolve[d] a disputed issue[.]" *Id.* at 118. So too, here: Media Intervenors-Appellants sought immediate access to unredacted judicial records containing the names of Debtors' customer-creditors and the Bankruptcy Court's

Order "conclusively resolve[d] [that] disputed issue[,]" *id.*, irrespective of what the Bankruptcy Court may or may not do in the future.

Finally, nothing in the Supreme Court's decisions in *Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015), or *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582 (2020), supports Appellees' claim that this Court lacks jurisdiction over this appeal.  Neither decision interprets the collateral order doctrine, *see id.*, and neither case involved a denial of access to judicial records filed in bankruptcy proceedings, *see id.*  To the extent they are relevant, those decisions <u>support</u> appellate jurisdiction here by highlighting that more expansive appellate review is available in bankruptcy matters.  In *Ritzen*, for example, the Court compared 28 U.S.C. § 1291 (governing appeals from "final decisions" from district courts) and 28 U.S.C. § 158(a) (governing appeals in bankruptcy proceedings), and noted that the latter—which allows for appeals from "proceedings" in addition to "cases"—is more permissive. *See* 140 S. Ct. at 586–90.  Applying that more permissive standard, the Court determined that an order entered in a bankruptcy matter was final and appealable because it was: (1) "separate from" claim-resolution proceedings, (2) involved a "discrete procedural sequence, including notice and a hearing," and (3) the relief "turn[ed] on [a] statutory standard[,]" *id.* at 589.  Thus, even if that standard applied, it is fully satisfied: Media Intervenors-Appellants' claim of access is wholly distinct from claims resolution in the underlying bankruptcy proceedings, there was a

separate notice and hearing process, and the relief set forth in the Order turned on the statutory standards set forth in Section 107 of the Bankruptcy Code.

For all these reasons, this Court has jurisdiction over this appeal.

## II.    The Bankruptcy Court made multiple errors of law.

Contrary to Appellees' arguments, and as detailed in Media Intervenors-Appellants' opening brief, the Bankruptcy Court made a number of errors of law, including (a) improperly shifting the burden to Media Intervenors-Appellants to disprove application of Sections 107(b)(1) and 107(c)(1); (b) failing to require a particularized showing (or to make particularized findings) with respect to the information that would be redacted in judicial records as a result of its Order, as is required by Third Circuit precedent; and (c) adopting and applying an erroneous interpretation of Section 107(b)(1) to permit the redaction of any information having any potential "value."  Far from being "manufacture[d]," Appellees' Br. at 37, these errors are evident from the record and necessitate reversal.

### A.    <u>The Bankruptcy Court failed to recognize and apply the presumption in favor of public access to judicial records.</u>

Section 107(a) of the Bankruptcy Code imposes a strong presumption of public access to filings in bankruptcy proceedings that is "rooted" in the common law "and buttressed by the First Amendment." *In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999).  Any party seeking to seal judicial records bears a "heavy burden" to overcome that presumption.  *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir.

1994).

In issuing the Order, however, the Bankruptcy Court started with the proposition that sealing the names of customer-creditors in cryptocurrency bankruptcy proceedings is appropriate, *see* A160:1–3 ("I think it goes without saying that a customer list in any bankruptcy case is something that is protected by 107(b) as a trade secret"), and it shifted the burden to the objecting parties—Media Intervenors-Appellants and the U.S. Trustee—to prove otherwise, *i.e.*, to <u>disprove</u> application of Sections 107(b)(1) and 107(c)(1) to the names of essentially all of Debtors' estimated 9 million customer-creditors in all filings in these Chapter 11 cases.

Notably, while Appellees <u>argue</u> that the Bankruptcy Court considered the presumption in favor of public access to bankruptcy filings and made "a determination that Appellees met their evidentiary burden, *overcoming* that presumption," Appellees' Br. at 37, they point to no place in the Order or the transcript of proceedings below where the Bankruptcy Court does so. Nor could they. In entering the Order, the Bankruptcy Court did not discuss, or even mention, (1) the presumption in favor of public access, (2) Appellees' burden to overcome that presumption, or (3) whether Appellees' evidence was sufficient to do so. *See generally* A700–A704; A693–A694. On the contrary, the Court repeatedly referred to what it viewed as the failure of Media Intervenors-Appellants and the U.S. Trustee

to introduce evidence to controvert Appellees' arguments, *see, e.g.*, A693:16–17; A694:8–9, and questioned what Media Intervenors-Appellants would "do with that information" if it was unsealed, A666:21–24. The Bankruptcy Court's failure to apply the weighty presumption in favor of public access was legal error necessitating reversal. *See Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 166–67 (3d Cir. 1993) (concluding that district court "improperly placed the burden of proof on [the party seeking access] to provide a sufficient reason to discover the documents under seal, rather than requiring [the parties who opposed access] to demonstrate a particularized need for continuing to enforce the protective order" (citation and internal quotation marks omitted)).

B.   The Bankruptcy Court's conclusion that it was not required to conduct a particularized assessment was erroneous as a matter of law.

Appellees do not dispute that the Bankruptcy Court's Order provides blanket authorization to redact the names of Debtors' customer-creditors from all filings, without regard to the type of judicial record at issue, or the identity (or circumstances) of any specific customer-creditor. Indeed, Appellees defend this sweeping approach, arguing that a generalized Order permitting wholesale redaction is appropriate because "the same considerations apply to *all* of the more than 9

9

million customer names on the FTX Debtors' customer lists[,]"[2] Appellees' Br. at 39, and that there is "no reason to distinguish between one customer or another for the purposes of Section 107(b)(1)" or Section 107(c), *id.* at 40.  Appellees' argument ignores the law and the factual record.

Third Circuit precedent is clear that before restricting public access to judicial records, courts must undertake a "particularized, deliberate assessment."  *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 677 n.11 (3d Cir. 2019).  A generalized, "collective evaluation of the harm" that will purportedly result from disclosure "falls short of the exacting analysis" required.  *Id.* at 677; *see also Leucadia*, 998 F.2d at 167 (explaining that courts must conduct a "document-by-document review" before sealing records).

Here, the Bankruptcy Court did not require Debtors or the Official Committee to make any particularized showing, whatsoever, as to any particular customer-creditor—or even as to discrete groups thereof.  *See, e.g.*, A534:7–11 (Cofsky admitting there has been no survey of top-200 customers to determine if they would want to continue on with FTX).  And the Bankruptcy Court expressly declined to make any particularized findings as to any particular customer-creditors, despite Media Intervenors-Appellants' contention that Debtors' top-50 customer-creditors,

---

[2]     While Appellees refer to the names of customer-creditors throughout their brief as "customer lists," there is not, to Media Intervenors-Appellants' knowledge, any such comprehensive document filed with the Bankruptcy Court.

for example, were differently situated.  It is clear from the record that the "same considerations" do not apply to all of Debtors' customer-creditors and there are, in fact, very good reasons to "distinguish between one customer or another."  For the purposes of Section 107(b)(1), for example, a "vast" number of Debtors' customer-creditors already use other cryptocurrency platforms, A254–A255 ¶ 24, undercutting Appellees' argument that sealing their names is essential to prevent them from being lured away by those same competitors.  And, for purposes of Section 107(c)(1), Appellees' own expert confirmed that he had never heard of a crypto novice having more than $10 million in cryptocurrency in a single exchange.  A619:16–22.  Many of Debtors' customer-creditors—including <u>all</u> of the top-50—had more than double that amount in FTX.  A44–A48.  There are, accordingly, numerous distinctions that were erroneously ignored below.

      C.    <u>The Bankruptcy Court erred in determining that merely having "value" is sufficient for application of Section 107(b)(1).</u>

As set forth in Media Intervenors-Appellants' opening brief, the Bankruptcy Court also erred as a matter of law in interpreting Section 107(b)(1) as applicable to any information with "value."  Media Intervenors-Appellants' Br. at 31.  To Media Intervenors-Appellants' knowledge, no court has ever interpreted Section 107(b)(1) so broadly—for good reason.  As discussed below, specific requirements must be met for information to qualify as either a trade secret or "confidential commercial information," and the mere fact that information may have "value" falls well short

of satisfying those requirements.  Because Appellees do not dispute that the Bankruptcy Court's interpretation of Section 107(b)(1) was legal error, they have conceded it.

### III.  The Bankruptcy Court abused its discretion in authorizing the redaction of customer-creditors' names under Section 107(b)(1).

The Bankruptcy Court concluded that the names of Debtors' customer-creditors (both institutions and individuals) are a "trade secret" and thus can be redacted under Section 107(b)(1).  A693:18–22.  The bulk of Appellees' Section 107(b)(1) briefing is devoted not to defending that determination but, instead, arguing that Debtors' customer-creditor names are "confidential commercial information," a conclusion the Bankruptcy Court did not reach.  *Compare* Appellees' Br. at 20–24, *with* Order.  Notably, however, Appellees are simultaneously arguing to the Bankruptcy Court it should reiterate its "trade secret" finding.  *See* Second Joint Motion of the Debtors and the Official Committee of Unsecured Creditors, *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del. Sept. 13, 2023), D.I. 2508.  But in any case, the Bankruptcy Court's ruling was erroneous under either framework and should be reversed.

### A.  The Defend Trade Secrets Act provides the applicable definition of "trade secret."

Appellees concede, as they must, that the Bankruptcy Code does not include a definition of "trade secret."  Appellees' Br. at 25.  Yet they dispute application of

the <u>only</u> federal statutory definition of that term, which is found in the Defend Trade Secrets Act, 18 U.S.C. § 1839(3) ("DTSA").  *See* Appellees' Br. at 26–27.

Appellees contend that because there is no express cross-reference to the DTSA in Section 107 of the Bankruptcy Code, the DTSA's definition of "trade secret" should be ignored.  *See* Appellees' Br. at 26.  But as the Third Circuit has explained, "[u]nder the *in pari materia* canon, statutes addressing the same subject matter generally should be read 'as if they were one law.'"  *Lafferty v. St. Riel*, 495 F.3d 72, 82 (3d Cir. 2007) (quoting *Wachovia Bank v. Schmidt*, 546 U.S. 303, 305 (2006)).  Section 107(b)(1) and 18 U.S.C. § 1839 concern the same subject matter— the protection of trade secrets—and should be read in conjunction with one another, both as a matter of basic statutory interpretation and common sense.

Moreover, while the DTSA is the only federal statute to define "trade secret," its definition mirrors the one found in the Uniform Trade Secrets Act ("UTSA"), which has been adopted by 48 states, including Delaware.  *See* Unif. L. Comm'n, Trade Secrets Act, https://perma.cc/DR5Z-WQEB (last accessed Sept. 27, 2023). Thus, Delaware's statutory definition of a "trade secret" is almost identical to the DTSA's: to qualify as a "trade secret," information must (1) "[d]erive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use[,]" and (2), must be "the subject of efforts

13

that are reasonable under the circumstances to maintain its secrecy."  6 Del. Code § 2001(4); *cf.* 18 U.S.C. § 1839(3).  The fact that state and federal law are in harmony further supports application of the definition of "trade secret" in the DTSA.

Because they cannot satisfy that definition, Appellees attempt to evade it. They claim that "[i]n the Third Circuit," there are six factors "to be considered in determining whether given information is a trade secret."  Appellees' Br. at 25–26 (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 829 (3d Cir. 2006) ("*Doebler*")).  But that is an egregious misstatement of the law.  The sole case cited by Appellees for that proposition was interpreting <u>Pennsylvania</u> law—and outdated Pennsylvania law at that.  As the Third Circuit expressly noted in *Doebler*, after the complaint was filed in that case, "Pennsylvania enacted the Uniform Trade Secrets Act, 12 Pa.C.S.A. § 5301 et seq."; it was not applicable because of its effective date. 442 F.3d at 829 n.20.  Simply put, the "six factors" identified by Appellees do not reflect binding Third Circuit law as Appellees wrongly claim.

In short, when determining what constitutes a "trade secret" for purposes of Section 107(b)(1) this Court should look to the definition provided in the DTSA.

B.  <u>The Bankruptcy Court did not make—and could not have made on the record before it—any of the findings necessary to support its conclusion that the names of FTX customer-creditors are a "trade secret."</u>

A court abuses its discretion if it fails to make required factual findings. *See, e.g.*, *United States v. A.R.*, 38 F.3d 699, 705 (3d Cir. 1994) ("abuse of discretion

occurs if the court fails to make the factual findings" required by statute).  Here, the Bankruptcy Court made no findings, whatsoever, as to either prong of what is required to constitute a trade secret under federal law.  *See* A700–A704; A693–A694.  Its Order authorizing the redaction of Debtors' customer-creditor names on that basis is therefore, necessarily, an abuse of discretion.

As an initial matter, Appellees present no argument, whatsoever, as to the second requirement that must be met for information to qualify as a "trade secret" under federal law: that the information "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]"  18 U.S.C. § 1839(3)(B); *see* Appellees' Br. at 25–28 (not addressing issue).

As to the first prong—that the "owner" took "reasonable measures to keep such information secret[,]" 18 U.S.C. § 1839(3)(A)—there was simply no evidence, at all, introduced below to prove this requirement is satisfied.  *Cf. In re Purdue Pharma L.P.*, 632 B.R. 34, 40 (Bankr. S.D.N.Y. 2021) (a sealing "request under § 107(b)(1) should be supported by specific evidence").

Moreover, as Media Intervenors-Appellants demonstrated, there is contrary evidence in the record, including in Debtors' own privacy policy.  *See* Media Intervenors-Appellants' Br. at 29–30.  Appellees try to dismiss the relevance of

FTX's policy permitting the sharing of customer-creditor names and other information with third parties by arguing those provisions apply only "in the event of a sale, merger or reorganization," or "if required to comply with law enforcement." Appellees' Br. at 27. That argument is misleading, at best. Other provisions cited by Media Intervenors-Appellants make expressly clear that FTX may share "personal information" (which includes customer names) with "Service Providers," "Business Partners," "NFT Partners," "Affiliates," and "Advertising Partners." A103–A104. The "NFT" paragraph, as just one example, states that if a customer redeems rewards through a promotional deal, Debtors "will provide the NFT Partner with your identifying information, <u>such as your name and mailing address</u>." A104 (emphasis added). On its face, Debtors' privacy policy did not limit the sharing of customer names with third parties to sales, mergers, or reorganizations, or for law enforcement purposes, as Appellees incorrectly claim.

In sum, the Bankruptcy Court did not make—and could not have made—the necessary factual findings to support its conclusion that the names of Debtors' customer-creditors constitute a "trade secret"; accordingly, it abused its discretion.

C. <u>The names of Debtors' customer-creditors are not "confidential commercial information" within the meaning of Section 107(b)(1).</u>

Effectively conceding that Debtors' customer-creditor names do not qualify as a "trade secret," Appellees devote much of their brief to arguing that those names are "confidential commercial information" under Section 107(b)(1), Appellees' Br.

at 20–24)—a determination the Bankruptcy Court, below, did not make, nor could it have made on this record.

        1.     *There is nothing in the record to support a finding of confidentiality.*

Just as Debtors proffered no evidence (and the Bankruptcy Court made no factual finding) that Debtors took "reasonable measures to keep" the names of FTX customers "secret[,]" for the purpose of proving those names are a "trade secret," Debtors also proffered no evidence (and the Bankruptcy Court made no factual finding) that those names have been kept "confidential." In fact, the record shows the opposite. A97, A103–A104 (FTX Privacy Policy); A22–A23, A25–A26 (Declaration of John J. Ray). For that reason alone, Appellees' alternative argument fails.

        2.     *"Value," alone, is insufficient to make information "confidential commercial information."*

To qualify as "confidential commercial information," Appellees also must show that the names of Debtors' customer-creditors are a "primary asset," *In re Frontier Grp., LLC*, 256 B.R. 771, 773 (Bankr. E.D. Tenn. 2000), whose disclosure would provide an "unfair advantage to competitors," *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (citation omitted). Here, the Bankruptcy Court determined that the names of Debtors' customer-creditors could be redacted under Section 107(b)(1) because they "ha[ve] value . . . to the [D]ebtors' estates."

A693:16–18.

As an initial matter, as noted above, Appellees do not respond to Media Intervenors-Appellants' argument that the Bankruptcy Court erred as a matter of law in interpreting Section 107(b)(1) to require only a showing of "value." *Compare* Media Intervenors-Appellants' Br. at 31 (quoting A693:16–18), *with* Appellees' Br. (not addressing argument). That is reversable error. To prove that Debtors' customer-creditor names are "confidential commercial information," Debtors were required to show that those names—standing alone—were "so critical to [Debtors'] operations" that their "disclosure will unfairly benefit that entity's competitors[,]" and would "reasonably be expected to cause the entity commercial injury." *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75–76 (Bankr. D. Del. 2006) (citations omitted). Appellees have not identified a single case holding that it is sufficient for information to merely have "value"—regardless of how *de minimis* that value, or how speculative—to qualify under Section 107(b)(1).

Appellees contend that there is "no requirement that a customer list be the 'primary asset' of a debtor in order to qualify as confidential commercial information under Section 107(b)(1)." Appellees' Br. at 21. But on the very <u>same page</u> of their brief, Appellees cite two cases holding just that: that customer lists qualified as "confidential commercial information" because they were the "primary asset[]" or only "real asset" of the debtor. *Id.* (quoting and citing *In re Altegrity, Inc.*, No. 15-

10226 (LSS), 2015 WL 10963572, at *3–4 (Bankr. D. Del. July 6, 2015) and *In re Nunn*, 49 B.R. 963, 965 (Bankr. E.D. Va. 1985)); *accord In re Frontier Grp.*, 256 B.R. at 773 (physician list was "primary asset").  There is simply no case law to support the proposition that "confidential commercial information" is any information that has any "value."

> 3. *The record does not support Appellees' argument that Debtors' customer-creditors names have sufficient "value" to warrant redaction as "confidential commercial information."*

Appellees' brief does not respond to a number of arguments that Media Intervenors-Appellants advanced in their opening brief—arguments, supported by the record, that make clear that Appellees' showing as to the purported "value" of the names of Debtors' customer-creditors was insufficient to overcome the presumption in favor of public access to bankruptcy court filings.

Appellees ignore that both the disastrous (and allegedly criminal) mismanagement of FTX, as well as the freezing of Debtors' customers' cryptocurrency wallets, are likely to decrease customers' willingness to trust FTX with their assets in the event of a reorganization.  *Compare* Media Intervenors-Appellants' Br. at 33–34, *with* Appellees' Br.[3]  Nor do Appellees respond to Media

---

[3]    Appellees do argue, citing testimony of their fact witness Cofsky, that customers would be incentivized to stay with FTX in the event of a "reconstituted exchange because they would likely be *owners of it*."  Appellees' Br. at 24 (citing A523:20–24).  But even setting aside the speculative nature of that theory, were it true, the motivation for a customer-creditor to stay with FTX would be financial self-

Intervenors-Appellants' argument that no evidence was introduced to show that *any* cryptocurrency exchange has *ever* successfully sold the names of its customers—in connection with a bankruptcy or otherwise.    *Compare* Media Intervenors-Appellants' Br. at 35–36, *with* Appellees' Br.   And Appellees likewise do not address the obvious flaws in Cofsky's testimony regarding the ability of a competitor to identify Debtors' customer-creditors with names alone.    *Compare* Media Intervenors-Appellants' Br. at 37–38, *with* Appellees' Br.

Appellees also do not address the argument that it was improper for the Bankruptcy Court to cut off a critical line of questioning into the basis for Cofsky's "belie[f]" that the names of Debtors' customer-creditors have "value"—a "belie[f]" apparently based on his knowledge of bids in two other cryptocurrency bankruptcies. *Compare* Media Intervenors-Appellants' Br. at 35–37, *with* Appellees' Br.   This omission is particularly telling given that in one of the cases Appellees rely on, the bankruptcy court criticized the U.S. Trustee's failure to cross-examine a witness on the commercial value of customer information by asking questions about "their experience with this issue in prior cases" and "prior instances of similar assets being sold[.]"   *In re Genesis Glob. Holdco, LLC*, 652 B.R. 618, 633 (Bankr. S.D.N.Y. 2023).   For the Bankruptcy Court here to sustain an objection to prevent such

---

interest—not the lure of a competitor.  There is nothing to suggest that such self-interest would be affected, at all, were the names of Debtors' customer-creditors not redacted in bankruptcy court filings.

questioning in the first place was—as Appellees do not dispute—erroneous.

Rather than respond to Media Intervenors-Appellants' arguments, Appellees instead attempt to shore up Cofsky's testimony by, for example, highlighting his educational background and work history. *See* Appellees' Br. at 24. But Cofsky was offered as fact witness—not an expert—and as Media Intervenors-Appellants have shown, his highly speculative and incomplete testimony falls far short of carrying Appellees' burden to overcome the presumption in favor of public access. *See* Media Intervenors-Appellants' Br. at 31–40. Indeed, the reliability of Cofsky's testimony as to the purported "value" of Debtors' customer-creditor names is questionable given that he was unaware of key facts, including that "a vast number of" Debtors' customer-creditors "use other online platforms or exchanges," like Coinbase and Metamask. A254–A255 ¶ 24 (Declaration of Jeremy A. Sheridan ("Sheridan Declaration")); *cf.* A527:20–23 (Cofsky testifying that he did not know whether any of Debtors' customer-creditors use other cryptocurrency platforms). Simply put, Cofsky's bare "belie[f]" that the names of Debtors' customer-creditors "would be valuable"—a "belie[f]" purportedly based on unspecified knowledge of other bids in cryptocurrency bankruptcies and "conversations" with unspecified

third parties, A511:2–15—is insufficient to support a finding that those names have any "value."[4]

Appellees rely heavily on *In re Genesis*, 652 B.R. 618.  That decision is neither binding on this Court, nor persuasive, and much of its reasoning conflicts with that of another bankruptcy court in the Southern District of New York.  *Cf. In re Celsius Network LLC*, 644 B.R. 276 (Bankr. S.D.N.Y. 2022).  In any event, it is distinguishable.  For instance, in *In re Genesis*, the lenders' names and contact information were found to be a "primary asset[]" of the debtors, 652 B.R. at 625.  Here, Appellees have not made—indeed, they assert they need not make—any such showing.

### IV.   The Bankruptcy Court erred by permanently sealing the names of Debtors' customer-creditors under Section 107(c)(1).

A.   <u>Section 107(c)(1) requires, and there is no evidence to support, a finding that disclosure of Debtors' customer-creditor names "would" create undue risk of harm.</u>

Section 107(c)(1) provides that a bankruptcy court may permit the redaction of "[a]ny means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed," in a Chapter 11 case from the Bankruptcy Code's

---

[4]   Appellees claim that it is "meritless" to assert that Debtors' customer-creditors "may also be customers of other cryptocurrency platforms."  Appellees' Br. at 24.  <u>Appellees' own expert witness</u> stated under penalty of perjury that "a vast number of the Debtors' customers use other online platforms or exchanges to hold digital assets (*e.g.*, Coinbase, Metamask, etc.)."  Sheridan Declaration, A254–A255 ¶ 24.

general mandate of public access in order to "protect an individual" if the court "finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property[.]" 11 U.S.C. § 107(c)(1). Thus, by its plain terms, Section 107(c)(1) requires a showing that disclosure <u>would</u> create undue risk of harm. Appellees' claim that requiring "certainty of undue risk" is "wrong" and "lacks any support in law," Appellees' Br. at 29–30, is therefore belied by the plain text of the statute and the basic rule of statutory construction that "every word in a statute should be given effect," *United States v. Weiss*, 52 F.4th 546, 552 (3d Cir. 2022).

*In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733 (D. Del. 2018), cited by Appellees, is not to the contrary. While the "assessment of risk" required by Section 107(c)(1) may be "forward-looking," *id.* at 751, the plain text of the statute requires a court to determine that "undue risk" would—not merely could—result from disclosure. The Bankruptcy Court made no such determination here. A694:8–18. That failure warrants reversal. *See In re Cendant Corp.*, 260 F.3d 183, 198 (3d Cir. 2001) (under common law, district court abused its discretion in sealing class action bids because, *inter alia*, it failed to make necessary, on-the-record, factual findings).

Nor could the Bankruptcy Court have made such a finding. Appellees fail to grapple with the fact that numerous names of FTX customer-creditors—including

members of the Official Committee (including Larry Qian and Zachary Bruch), as well as ordinary FTX customers who have identified themselves online and to members of the news media—are public already, and there is no evidence in the record of their being the targets of, let alone the victims of, any malfeasance. *Compare* Media Intervenors-Appellants' Br. at 43–45, *with* Appellees' Br. (failing to address issue).  Notably, in attempting to sidestep this fact, Appellees resort, once again, to improper burden shifting, claiming that Media Intervenors-Appellants "offered absolutely no evidence below that customers are <u>not</u> at risk."  Appellees' Br. at 34 (emphasis added).  As detailed above, however, contrary to Appellees' arguments and the Bankruptcy Court's Order, it is Appellees' burden to prove redaction is warranted under Section 107(c)(1). *See, e.g.*, *Leucadia*, 998 F.2d at 166.

B.   <u>The Bankruptcy Court abused its discretion in authorizing the permanent sealing of Debtors' customer-creditor names.</u>

Section 107(c)(1) requires more than a risk of identity theft or injury from disclosure; it requires "undue" risk—in other words, beyond ordinary risk.  *See* Media Intervenors-Appellants' Br. at 45–46 (collecting dictionary definitions and cases).  Appellees concede, as they must, that "phishing and other similar scams <u>can be used to target anyone</u>[.]"  Appellees' Br. at 36 (emphasis added).  But they contend that the "very nature of cryptocurrency places holders at high risk." *Id.* Appellees' argument—which, if accepted, would create a default presumption in favor of sealing the names of customer-creditors in all cryptocurrency

24

bankruptcies—is contrary to law and not supported by the evidence. The Bankruptcy Court abused its discretion by adopting it.

To support their categorical theory, Appellees point to Sheridan's testimony about his <u>personal</u> experience vis-à-vis phishing attempts. *See* Appellees' Br. at 35–36. But it is hardly surprising that Sheridan has seen more victims of phishing in the cryptocurrency context, *see* A601:19–22; he works for a company where he investigates crimes related to digital assets, A554:1–6. Moreover, Sheridan confirmed on cross-examination that he had <u>not</u> seen any data or research comparing how often known cryptocurrency holders and non-cryptocurrency holders are the targets of phishing attacks, A601:5–10, and confirmed that phishing can target anyone who uses e-mail, text messages, or instant messages, A600:21–25. There is no evidentiary basis in the record to conclude that the disclosure of the names of Debtors' customer-creditors in bankruptcy court filings would create an "undue risk" of phishing attempts—let alone successful ones—solely because those customer-creditors are cryptocurrency holders.

In fact, as Media Intervenors-Appellants pointed out, the opposite is just as likely to be true. *See* Media Intervenors-Appellants' Br. at 52. And while Appellees argue there is no "evidence whatsoever" to support a finding that cryptocurrency holders are in a <u>better</u> position to avoid being scammed, Appellees' Br. at 35, Appellees' own expert admitted on cross-examination that individuals who have

25

funds tied up in these bankruptcy proceedings, in particular, may be more cautious and less likely to fall for scams.  A620:2–8.

Similarly, Appellees argue that there is no evidence to suggest that FTX's top-50 creditors are well-equipped to avoid falling victim to digital scams.  Appellees' Br. at 35.  But again, Appellees' expert testified to the contrary.  Sheridan admitted he had never seen a novice individual cryptocurrency investor with more than $10 million in a single exchange.  A619:16–22.  And as Media Intervenors-Appellants noted, the smallest of Debtors' top-50 creditors has claims of more than double that amount, A44–A48; they are not, according to Sheridan, novices in the cryptocurrency context.  That distinction was completely ignored by the Bankruptcy Court when it authorized permanent redaction of the names of all Debtors' individual customer-creditors.

C.     The Kroll "incident" underlines the erroneous nature of the Order.

In August 2023, after the Order was entered, Debtors' claims agent, Kroll, experienced a "cybersecurity incident" that resulted in an "unauthorized party" gaining access to, *inter alia*, names, addresses, and e-mail addresses of approximately 78,459 FTX claimants (*i.e.*, Debtors' creditors).  A744, A746. Appellees assert that, as a result of that "incident," a "number of users reported that they had received phishing emails, whereby a third party used names and email addresses to attempt to gain access to users' FTX accounts."  Appellees' Br. at 11.

Appellees claim these events are "precisely the risk" that the Bankruptcy Court "found justified its order sealing customer names pursuant to Section 107(c)." Appellees' Br. at 33.  But the data purportedly included in the Kroll "incident" included e-mail addresses, key information that enabled the "phishing emails" to be sent.  Here, in contrast, Media Intervenors-Appellants argue only that the names of customer-creditors should not be redacted.  There is no evidence in the record of any phishing attempts targeting Debtors' customer-creditors whose names, alone, are public.  *See supra*.

Moreover, like the phishing attempts in *Celsius* that Appellees repeatedly pointed to below, there is no evidence that any phishing attempt spurred by the Kroll "incident" was successful.  It shows, at most, that an unknown number of FTX customers whose email addresses were obtained received additional phishing e-mails on top of the routine phishing e-mails nearly everyone receives on a near-daily basis.  As the Bankruptcy Court, itself, noted, that is "something that happens all the time in our society today[.]"  A694:11.

In any event, the Kroll "incident," while unfortunate, eliminates any argument that Section 107(c)(1) justifies the continued redaction of the names of any of Debtors' individual customer-creditors that were among the 78,459 claimants affected by the breach.  Even setting aside the Order's other failings that necessitate reversal, given that an "unauthorized party" now has the names, e-mail addresses,

physical addresses, and more of tens of thousands of Debtors' customer-creditors, the redaction of their names, alone, in bankruptcy court filings can no longer "protect" those customer-creditors from being "targeted" by online scammers. A694.   The Order should be reversed as to those names for that reason, too.

## **CONCLUSION**

For the reasons set forth above and in their opening brief, Media Intervenors-Appellants respectfully request that the Court vacate the portions of the Order below authorizing the redaction of the names of Debtors' customer-creditors.

Date: October 5, 2023

/s/ David L. Finger
David L. Finger (ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th fl.
Wilmington, DE 19801
302.573.2525
*Counsel of Record for Appellants*

Katie Townsend (*pro hac vice*)
Adam A. Marshall (*pro hac vice*)
Reporters Committee for Freedom
    of the Press
1156 15th St. NW, Ste. 1020
Washington, DC 20005
(202) 795-9300
ktownsend@rcfp.org
amarshall@rcfp.org
*Counsel for Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing brief complies with the type-volume limitations set forth in Federal Bankruptcy Rule 8015(a)(7)(B) and this Court's Standing Order Regarding Briefing in All Cases in that the brief contains 6,492 words as counted by Microsoft Word, and was prepared in 14-point Times New Roman font.

/s/ David L. Finger
David L. Finger (ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th fl.
Wilmington, DE 19801
302.573.2525
*Counsel of Record for Appellants*

29